**THE BEINHAKERMILLER LAW FIRM, LLC**
414 Westfield Avenue
Westfield, New Jersey 07090
(908) 272-2232
Attorneys for Plaintiff

<div style="margin-left:2em;font-weight:bold;">THE BEINHAKERMILLER LAW FIRM, LLC</div>
<div>414 Westfield Avenue</div>
<div>Westfield, NJ 07090</div>
<div>908.272.2232 – Fax: 908.233.4546</div>

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. JASON M. COHEN, M.D., F.A.C.S., as assignee of James Powers-Hill, and JAMES POWERS-HILL <br><br> Plaintiff, <br><br> vs. <br><br> INDEPENDENCE BLUE CROSS, QCC INSURANCE COMPANY and COMCAST CORPORATION <br><br> Defendant. | Civil Action No.:  3:10-CV-04910-FLW-TJB |

---

### MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF DEFENDANTS INDEPENDENCE BLUE CROSS AND QCC INSURANCE COMPANY TO DISMISS ALL COUNTS OF PLAINTIFFS' AMENDED COMPLAINT EXCEPT FOR COUNT I FOR FAILURE TO STATE A CLAIM

---

On the Brief:

Mark D. Miller, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

CHOICE OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

    I.     DR. COHEN HAS STANDING TO BRING HIS CLAIMS
         AGAINST DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

        A.     Dr. Cohen Has Standing as a Matter of
             ERISA Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

        B.     The Anti-Assignment Provisions of Defendants
             Subscriber Agreements Do Not Necessarily
             Deprive Dr. Cohen of Standing to Bring This
             Action Because Through their Course of Conduct
             Defendants Could Have Waived Those Provisions
             and May be Equitably Estopped From Arguing
             That the Patient's Assignment of Benefits is Void . . . . . .   13

    II.    PLAINTIFFS HAVE PROPERLY PLEAD A CLAIM
         AGAINST IBC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

        A.     Plaintiffs Have Properly Stated a Cause of Action
             For Defendants Failure to Provide Required
             Disclosures under ERISA . . . . . . . . . . . . . . . . . . . . . . .   15

        B.     Plaintiffs Have Properly Stated a Cause of Action
             For IBC's Breach of Fiduciary Duty Under ERISA . . . .   17

        C.     The Patient Can Seek Payment Under a Breach of
             Fiduciary Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

    III.    COUNT FIVE IS PREEMPTED BY ERISA . . . . . . . . . . . . . . .   20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

## <u>TABLE OF CITATIONS</u>

<u>ALA, Inc. v. CCAIR, Inc.</u>
    29 F.3d 855 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19


<u>Ambulatory Sugical Center of New Jersey v. Horizon Healthcare Services</u>
    2008 U.S. Dist. Lexus 13370 (D.N.J. February 21, 2008) . . . . . . . . . . . . . .12, 13

<u>Arber v. Equitable Beneficial Life Ins. Co.</u>
    889 F. Supp. 194 (E.D. Pa. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..19

<u>Blue Cross of Western Pa. Litig.</u>
    942 F. Supp. 1061 (W.D. Pa. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 18, 19

<u>Briglia v. Horizon Healthcare Services, Inc.</u>
    2005 U.S. Dis. LEXUS 1870 2005 WL 1140687 . . . . . . . . . . . . . . . . . . . . .17

<u>Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.</u>
    776 F. Supp. 181 (E.D. Pa. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Charter Fairmount Inst., Inc. v. Alta Health Strategies</u>
    835 F. Supp. 233 (E.D. Pa. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Chiera v. John Hancock Mut. Life Ins. Co.</u>
    2001 U.S. App. LEXIS 1917 (6th Cir. Feb. 2, 2001) . . . . . . . . . . . . . . . . . . .18

<u>City of Hope Nat'l Med. Ct. v. Healthplus, Inc.</u>
    156 F.3d 223 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Colburn v. Upper Darby Twp.</u>
    838 F.2d 663 (3rd Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Cromwell v. Equicor-Equitable HCA Corp.</u>
    944 F.2d 1272 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..10

<u>Curcio v. John Hancock Mut. Life Ins. Co.</u>
    33 F.3d 226 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

<u>Daniels v. Thomas & Betts</u>
    263 F.3d 66 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Garden State Bldgs., L.P. v. First Fid. Bank, N.A.</u>
    305 N.J. Super. 510 (N.J. Super. Ct. App. Div. 1997)
    Cert. denied (153 N.J. 50 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Graden v. Conexant Systems Inc.
 496 F.3d 291 (3rd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Grayson v. Mayview State Hosp.
 293 F.3d 103 (3rd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Gregory Surgical Services v. Horizon Blue Cross Blue Shield of New Jersey
 2006 WL1541021 (N.J.) (June 1, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Haberen v. Kaupp Surgical Ltd.
 24 F.3d 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Henry v. Richardson Merril Inc.
 508 F.2d 28 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Hermann Hosp. v. MEBA Med. & Benefits Plan
 959 F.2d 569 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Instructional Systems v. Computer Curriculum Corp.
 130 N.J. 324 (N.J. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

IT Corp. v. General Am. Life Ins. Co.
 107 F.3d 1415 (9th Cir. 1997)
 Cert. denied, 522 U.S. 1068 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

Kennedy v. Conn. Gen. Life Ins. Co.
 924 F.2d 698 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Klaxon Co. v. Stenton Electric Mfg. Co.
 313 U.S. 487 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lutheran Med. Ctr. V. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan
 25 F.3d 616 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Maio v. Aetna, Inc.
 221 F.3d 472 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Misic v. Bldg. Serv. Employees Health & Welfare Trust
 789 F.2d 1374 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Mortensen v. First Federal Savings and Loan Ass'n.
 549 F.2d 884 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

Neuner v. Horizon Blue Cross Blue Shield of N.J.
 301 B.R. 662 (Bankr. D.N.J. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

Northwestern Inst. Of Psychiatry, Inc. v. Travelers Ins. Co.
     No. 92-1520 U.S. Dist. LEXIS 13700 (E.D. Pa. Sept. 3, 1992) . . . . . . . . . . . 11

Pane v. RCA
     868 F.2d 631 (3rd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Paradise Enterprises Ltd. v. Sapir
     356 N.J.Super. 96 (App. Div 2002)…………………………………………. 9

Rehabilitation Inst. Of Pittsburgh v. Blue Cross & Blue Shield of N.W. Va., Inc.
     184 U.S. Dist. LEXIS 24780 at *6-7 (W.D. Pa. July 27, 1984) . . . . . . . . . . . 11

Rowe v. Hoffman LaRoche Inc.
     189 N.J. 615 (N.J. 207) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Semerenko v. Cendant Corp.
     223 F.3d 165 (3rd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tango Transp. V. Healthcare Fin. Servs. LLC
     322 F.3d 888 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Variety Corp. v. Howe
     516 U.S. 489 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## OTHER AUTHORITIES

ERISA § 502(a)                              10,11,12,19,20

29 U.S.C. § 1132(a)(1)(B)           10,11,12,19

29 U.S.C. § 1002(8)                 10,12

29 U.S.C. § 1002(21)(A)          17

Rest 2d Conflict of Laws Section 188     9

Plaintiff Dr. Jason M. Cohen, M.D. a licensed and board certified spinal surgeon  ("Dr. Cohen") and the patient James Powers Booth, (the "Patient") (collectively Dr. Cohen and the Patient may be referred to as Plaintiffs) respectfully submit this Memorandum of Law in opposition to the motion of defendants Independence Blue  Cross ("IBC") and QCC Insurance Company ("QCC") to dismiss all Counts of Plaintiffs  Amended Complaint except for Count I (Patient's claim for improper payments against QCC) for failure to state a claim.  Plaintiffs do not oppose dismissal of Dr. Cohen's state law claims as preempted by ERISA.

## PRELIMINARY STATEMENT

In this action Plaintiffs seek to recover an additional $138,502.10 in billed charges rather than accept the $5123.00 paid to the Patient by IBC and turned over to Dr. Cohen. Plaintiffs seek to recover from IBC, QCC and Comcast (Patient's employer and Plan sponsor) the full amount of payments that Defendants, under ERISA, are required to make to Plaintiffs for services that Dr. Cohen provided to the Patient whom IBC insures.  IBC and QCC argue that Dr. Cohen does not have standing to bring any cause of action against any of the Defendants, arguing that the assignment of benefits that the Patient made to Dr. Cohen is invalid due to the operation of an anti-assignment provision in QCC contract with the Patient.  Yet regardless of those anti-assignment provisions, Dr. Cohen has standing to bring its causes of action against Defendants as a matter of ERISA law.  An overwhelming number of courts have held that a health care provider (such as Dr. Cohen here) who receives an assignment of benefits from a patient becomes a "beneficiary" under ERISA.  And ERISA explicitly provides that a beneficiary has the right to sue an insurer for payments due under the plan.  Thus when Defendants argue that the anti-assignment provisions deprive Dr. Cohen of standing, Horizon is in effect arguing that contractual language trumps the operation of a federal statute.  In a recent case, the Honorable Susan D Wigenton, U.S.D.J.  found such an anti-assignment clause to be unenforceable as a  matter of law.

THE BEINHAKERMILLER LAW FIRM, LLC
414 Westfield Avenue
Westfield, NJ 07090
908.272.2232 – Fax: 908.233.4546

Even apart from the operation of ERISA, Dr. Cohen should have  standing to bring his claims against Defendants because Defendants have waived the benefit of the anti-assignment provision or should be estopped from relying upon those provisions by having dealt with Dr. Cohen's offices directly in discussing the surgery, prequalifying the Patient and the surgical procedures to be performed, accepting the claim forms, communicating with Dr. Cohen's office on the appeal process and the status of the appeal. With the exception of mailing the check to the Patient and the Patient's participation in the Second Level appeal, Dr. Cohen's office was the principal contact with Defendants. The Defendants were well aware of the assignment the Patient executed to Dr. Cohen's benefit; the Defendants were well aware that Dr. Cohen only performed the surgery expecting to be paid on that assignment. Yet, IBC never raised the issue of an anti-assignment clause or even provided a copy of the Plan to Plaintiffs until it was filed in Defendant's motion to dismiss the original Complaint, two years after the Patient's surgery. Courts have applied such theories of waiver and estoppel to hold that a health care provider (such as Dr. Cohen here) has standing to bring claims against an insurer pursuant to an ERISA plan.

Likewise, in this same application, pursuant to this same Plan document, IBC   asks this Court to dismiss all claims against IBC because it is not a "fiduciary" Yet, the check was written by IBC; the EOB issued by IBC; the appeal and second level appeal were conducted by IBC and IBC apparently rejected Blue Card's (IBC's local Blue Cross liason) suggested allowed amount in this matter. It appears that IBC had more discretion and more input in the decision than just the ministerial task of processing claims and issuing checks. Thus, IBC falls within the broad definition of a "fiduciary" as set forth in ERISA.

Finally, public policy strongly favors recognizing Dr. Cohen's standing to pursue this action against the Defendants.  The reality of health care today is that patients rely on the experience and sophistication of their health care providers to navigate the exceedingly complex policies and procedures that govern claims and other interactions with health care insurers.  ERISA recognizes

this reality in various provisions that shift from the patient to the health care provider the burden of contesting the actions of an insurer, regardless of contractual language to the contrary (such as language purporting to restrict assignment or the right to take legal action). More importantly, IBC, QCC and Comcast are out of State entities which are portending to deliver health care benefits to employees who work and live in New Jersey. . These entities are trying to pay a New Jersey spinal surgeon $5,123.90 on a $143,626.00 bill. Based upon their out of State status they somehow escape jurisdiction of the Department of Banking and Insurance and cannot be called upon to answer to the arbitration process set up to protect New Jersey Health Care Providers from just these kind of situations. Unless this Court allows Dr. Cohen to proceed he will have no remedy.

## STATEMENT OF FACTS

Dr. Cohen, is a board certified spinal surgeon licensed to practice in the State of New Jersey and a Diplomat of the American Board of Spinal Surgery. (First Amended Complaint at para. 1) Cohen is associated with Professional Orthopaedic Associates with offices in Tinton Falls, Toms River and Freehold, New Jersey. (Id.)

Cohen performed a complex and specialized spinal surgery on James Powers-Hill ("Patient") on November 3, 2008 who was, at that time, insured by or a plan member of IBC (hereinafter (1st Amended Complaint at para. 2.) Cohen sought payment from IBC for surgery and procedures ("Services") performed on the Patient under the Patient's I.D. #50117905 under Defendants' Plan. (First Amended Complaint at para. 3)

Cohen was a non-participating provider of services in that he did not have a contract with IBC to accept agreed upon rates for services provided to the Patient. (First Amended Complaint at para. 4)

The Services provided to the Patient were "out of network" Services under the Defendants' policy and/or plan providing coverage to the Patient. (Id.) Prior to rendering the Services to the Patient,

THE BEINHAKERMILLER LAW FIRM, LLC
414 Westfield Avenue
Westfield, NJ 07090
908.272.2232 – Fax: 908.233.4546

Dr. Cohen's office called the Defendant to confirm that the Patient had out-of-network benefits for the services that were to be provided by Dr. Cohen. (First Amended Complaint at para. 5)

All of the Services provided to the Patient were medically necessary and appropriate for the Patient according to recognized medical standards. (First Amended Complaint at para. 6) All of the services provided by Plaintiff were performed at Monmouth Medical Center in Long Branch where Plaintiff enjoys surgical privileges. (First Amended Complaint at para. 7)

The terms of Defendants' insurance agreements or plans were controlled by the laws of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1101, et seq. (Complaint at para. 8) Dr. Cohen received an assignment of benefits from the Patient. (Complaint at para. 9) The assignment of benefits provides: "I hereby authorize any insurance company to pay the proceeds of any benefits due me directly to Professional Orthopedic Associates. A copy of this can be considered as an original for insurance purposes." (First Amended Complaint at para. 10)

Plaintiff submitted a claim to IBC through Blue Card for Services provided by Dr. Cohen to the Patient pursuant to the assignment of benefits signed by the Patient for the Services performed on November 3, 2008 in the amount of $143,626.00. (First Amended Complaint at para. 11). The claim was received by IBC and was designated by Defendants as claim # IG03250900311. (First Amended Complaint at para. 12)

On April 2, 2009, IBC made a single payment to the Patient for claim # IG03250900311 in the amount of $5,123.90 and pursuant to the Assignment of Benefits form signed by the Patient, payment was then made by Patient to Dr. Cohen. (First Amended Complaint at para. 13) Defendant's payment to Plaintiff was $138,502.10 less than the amount of Dr. Cohen's claim and represented less than three point six percent (3.6%) of the amount of the Claim. (First Amended Complaint at para. 14)

.    On April 20, 2009, on behalf of the Patient Dr. Cohen's office filed an  Appeal with the Defendants through BlueCard explaining the billing procedures and detailing the usual and

THE BEINHAKERMILLER LAW FIRM, LLC
414 Westfield Avenue
Westfield, NJ 07090
908.272.2232 – Fax: 908.233.4546

customary rates charged by a surgeon in this geographic area for the Services provided the Patient. (First Amended Complaint at para. 17)  As part of that Appeal, Dr. Cohen attached the Ingenix Customized Fee Analysis.   All CPT Codes/Multi-specialty for U.S. Zip Code 077xx.   (First Amended Complaint at para. 18)  As part of that April 20, 2009 letter Dr. Cohen's office requested a copy of the documents upon which IBC made its reimbursement decision (April 20, 2009 letter). Dr. Cohen's office had learned through Blue Cross and IBC's in State that IBC had liaison rejected the suggested allowed amount and instead decided to pay the $75,000 (April 20, 2009 letter).

 Defendants denied Dr. Cohen's appeal by telephone, but has never sent a written denial directly to  Dr. Cohen. (First Amended Complaint at para. 19) IBC instead sent a denial letter directly to and addressed to the Patient. (First Amended Complaint at para. 20)

Thereafter, the Patient filed another appeal and on August 13, 2009, Defendant denied the Patient's Second Level Grievance/Appeal for the following reasoning:

> "In your member handbook or certificate, the section entitled – *"Payment of Providers"* the Personal Choice/PPO Program allows a Covered Person to obtain Covered Services from Non-Preferred, Non-Participating Providers.  If a Covered Person uses a Non-Preferred, Non-Participating Provider, the Covered Person will be reimbursed for Covered Services but will incur significantly higher out-of-expenses including Deductibles, Coinsurance and the balance of the provider's bill.  This is true whether a Non-Preferred, Non-Participating Provider is used by choice, for level of expertise, for convenience, for location, because of the nature of the services or based on the recommendation of a provider." (First Amended Complaint at para. 20)  To date, Defendants have denied any further payment to Patient and Dr. Cohen. (First Amended Complaint at para. 22)

The Patient has exhausted all administrative remedies and/or any further administrative appeals (if they exist) would have been futile. (First Amended Complaint at para. 23)  Dr. Cohen's office was informed by telephone on January 11, 2010 that all appeal rights, both his and the Patient's, has been exhausted, as an out-of-network provider, Dr. Cohen has no appeal rights. (First Amended Complaint at para. 23)

THE BEINHAKERMILLER LAW FIRM, LLC
414 Westfield Avenue
Westfield, NJ 07090
908.272.2232 – Fax: 908.233.4546

## PROCEDURAL HISTORY

Dr. Cohen filed his Complaint on September 23, 2010 as assignee of the Plaintiff against IBC seeking to recover the remaining monies IBC should have paid to Dr. Cohen on a $143,000 plus surgery pursuant to the applicable insurance policies and New Jersey regulations.  On November 1, 2010, IBC moved to dismiss the Complaint for failure to state a claim.  In support of its motion to dismiss, IBC argued (as IBC argues here) that Dr. Cohen does not have standing to bring a cause of action against IBC and that all state law claims asserted are preempted by ERISA. Specifically, IBC argued that the Patient's assignment of benefits to Dr. Cohen is invalid due to the operation of anti-assignment provision in the Plan contract with the Patient In response to the motion, Dr. Cohen and IBC agreed that IBC would withdraw its motion to dismiss without prejudice and that Dr. Cohen would file an amended complaint.

On February 8, 2010 Dr. Cohen now joined by the Patient, filed an Amended Complaint against IBC, QCC and Comcast.  QCC and Comcast were first identified by the Plan which was finally submitted as part of the initial motion to dismiss.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss should be granted only when "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff," the plaintiff is unable to show that it is entitled to the relief being sought.  Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).  To withstand a Rule 12(b)(6) motion, a plaintiff need only make out a claim upon which relief can be granted.  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988).  In reviewing a motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in the light most favorable to plaintiffs.  Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).  A "plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn." Mortensen v. First Federal Savings and Loan Ass'n, 549 F.2d 884, 891 (3d

THE BEINHAKERMILLER LAW FIRM, LLC

414 Westfield Avenue
Westfield, NJ 07090
908.272.2232 – Fax: 908.233.4546

Cir. 1977).  In order to grant a 12(b)(6) motion to dismiss, the Court must find that plaintiffs will be unable to prevail even if they prove all of the allegations in the complaint, basing its decision solely on the legal sufficiency of the complaint.  Id.

## CHOICE OF LAW

In Defendants brief, Defendants do not substantively address which law applies. In a footnote, on page 12 of their brief Defendants merely conclude that the Plan (finally delivered two years after the surgery) says that Pennsylvania law applies so thus, Pennsylvania law applies. Not so fast.

The choice of law in that Contract was negotiated between QCC and Comcast, the parties to the Plan. Neither the Patient nor Dr. Cohen had any say in the choice of law contained in the Plan and either negotiated for or agreed to Pennsylvania law controlling their interactions. When there is a dispute between what law controls, the choice of law of the State where the Court sits is used to make that determination.  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-491 (1941). The first determination the Court must make is whether there is an actual conflict in the laws of the two states at issue.  Rowe v. Hoffman LaRoche Inc., 189 N.J. 615 (N.J. 207). If there is none, the Court applies the law of the home state. Id.  Here, it appears that the critical issue is ERISA standing pursuant to an assignment. The Defendants characterize the law of Pennsylvania regarding waiver and estoppel as absolute (requiring a knowing and active intention to waive a right) (Def. Brief at pp.20-21) while New Jersey is more fact sensitive geared to the specific facts and circumstances and action or inactions of each case. (Def. Brief at p. 23-24, footnote 11).  Iit would appear that in establishing whether Dr. Cohen can bring an ERISA claim there is a significant difference in the law of the two states, thus there is an actual conflict.

When the application of two different states laws may result in different findings, the Court will then evaluate which state has the greatest stake in the outcome of the litigation "the governmental interest analysis."  Henry v. Richardson-Merrell Inc., 508 F.2d 28, 32 (3d Cir.1975).

THE BEINHAKERMILLER LAW FIRM, LLC
414 Westfield Avenue
Westfield, NJ 07090
908.272.2232 – Fax: 908.233.4546

Under this analysis, the state law chosen in a contract will be honored unless: (1) the state has no relationship to the parties; (2) the chosen state's law conflicts with a fundamentally greater interest in determining the particular interest. <u>Instructional Systems v. Computer Curriculum Corp.</u>, 130 N.J. 324 (N.J. 1992). Here, although Pennsylvania certainly has an interest in this litigation involving three Pennsylvania entities, New Jersey has more of an interest. Here, we have the Patient, a New Jersey resident who works in New Jersey; Dr, Cohen, a New Jersey resident and healthcare provider; surgery conducted in a New Jersey Hospital; and three Pennsylvania entities who are involved in the health care insurance business in New Jersey. The Patient was examined for his surgery in New Jersey; clearance and approval for surgery was provided through an office in New Jersey; claims were made from New Jersey; even IBC and negotiated through Blue Card, again located in New Jersey. The Court will recall that Blue Card's suggested rate was rejected by IBC. In this instance, New Jersey has the fundamental interest in making sure its citizens receive proper healthcare, its healthcare providers get paid and has more of stake in the outcome of this litigation than does Pennsylvania. Moreover, neither Dr. Cohen or the Patient could be said to have agreed to Pennsylvania law therefore the application of Pennsylvania law to them would be unreasonable. <u>Paradise Enterprises Ltd. v. Sapir,</u> 356 N.J.Super. 96 (App. Div 2002) Further when there is no agreement between the parties as to a choice of law, the law of the state with the most significant relationship to the transaction should apply. <u>Rest.2d Conflict of Laws Section 188.</u> In this case between Dr. Cohen and the Defendants, that would be New Jersey.

<div align="center">

**ARGUMENT**

**I.**

**DR. COHEN HAS STANDING TO BRING HIS CLAIMS AGAINST DEFENDANTS**

</div>

Dr. Cohen has standing to bring his claims against Defendants for two independent reasons. First, Dr. Cohen has standing to bring his claims against Defendants as a matter of ERISA law. Second, Dr. Cohen has standing to bring its claims against Defendants through IBC and BlueCard's

THE BEINHAKERMILLER LAW FIRM, LLC

414 Westfield Avenue
Westfield, NJ 07090
908.272.2232 – Fax: 908.233.4546

course of dealings with Dr. Cohen. Although these entities dealt with Dr. Cohen for a period of almost two years on this claim, their failure to even the issue of the anti-assignment clause has effectively consented to the Patient's assignment of benefits, and Defendants should be equitably estopped from now arguing that the assignment of benefits is void.

A.     **Dr. Cohen Has Standing as a Matter of ERISA Law**

Dr. Cohen has standing to bring its claims against Defendants as a matter of ERISA law, regardless of the presence of any anti-assignment provisions in the QCC subscriber agreements.  A health care provider to whom a patient assigns benefits, such as Dr. Cohen here, has standing to sue as a "beneficiary" under § 502(a) of ERISA, 29 U.S.C. § 1132(a)(1)(B).  ERISA defines a "beneficiary" as "a person designated by a participant . . . who is or may become entitled to a benefit" under the plan.  29 U.S.C. § 1002(8).  ERISA further provides that a "beneficiary" is entitled to bring litigation to collect benefits owed under the plan.  29 U.S.C. § 1132(a)(1)(B).  When the Patient assigned his benefits to Dr. Cohen, the Patient designated Dr. Cohen to be entitled to certain benefits under the plan, including (but certainly not limited to) the right to receive payment. Thus as a matter of ERISA law, Dr. Cohen is a beneficiary and has standing to bring his causes of action against Defendants regardless of the presence of any anti-assignment provisions in the Defendants' subscriber agreements.

Many federal courts have recognized that a health care provider to whom a patient assigns benefits, such as Dr. Cohen here, has standing to sue as a "beneficiary" under § 502(a) of ERISA. See, e.g., City of Hope Nat'l Med. Ctr. v. Healthplus, Inc., 156 F.3d 223, 227-228 (1st Cir. 1998) ("a health care provider, as the assignee of a beneficiary, acquires derivative standing and is able to sue as a 'beneficiary' by standing in the shoes of his assignor"); Tango Transp. v. Healthcare Fin. Servs. LLC, 322 F.3d 888, 891-92 (5th Cir. 2003) ("an assignee of a plan participant has derivative standing to bring a cause of action for enforcement under ERISA"); Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1277-78 (6th Cir. 1991) ("[a] health care provider may assert an ERISA claim

THE BEINHAKERMILLER LAW FIRM, LLC

414 Westfield Avenue
Westfield, NJ 07090
908.272.2232 – Fax: 908.233.4546

as a 'beneficiary' of an employee benefit plan if it has received a valid assignment of benefits");

Kennedy v. Conn. Gen. Life Ins. Co., 924 F.2d 698, 700-01 (7th Cir. 1991) ("§ 1132(a)(1)(B)

supplies jurisdiction when a provider of medical services sues as an assignee of a participant");

Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan, 25

F.3d 616, 619-21 (8th Cir. 1994) (holding that under § 502(a) of ERISA, health care providers had

standing to bring a cause of action as assignees of beneficiaries despite a non-assignment provision,

because the insurer had conducted itself as if the assignment of benefits was effective); Misic v.

Bldg. Serv. Employees Health & Welfare Trust, 789 F.2d 1374, 1378 (9th Cir. 1986) (a health care

provider "sues derivatively, as assignee of beneficiaries" because the health care provider "stands in

the shoes of the beneficiaries" who "are expressly authorized by § 1132(a)(1)(B) to sue to recover

benefits due").[1]

 Defendants argue that Dr. Cohen cannot have standing to bring his claims against Defendants

because the QCC/ Comcast  subscriber agreement contains a provision that purports to limit the right

of plan participants to assign benefits to health care providers such as Dr. Cohen.  See  Defendants'

Br. at pp18-19.

 Under ERISA, a health care provider to whom a patient assigns benefits has standing to sue

as a "beneficiary" under § 502(a) of ERISA, as explained in the federal cases cited above.  ERISA

defines a "beneficiary" as "a person designated by a participant . . . who is or may become entitled to

---

[1] Although the United States Court of Appeals for the Third Circuit has not yet issued an opinion applying the rule that a health care provider to whom a patient assigns benefits has standing to sue as a "beneficiary" under § 502(a) of ERISA, numerous district courts within this circuit have explicitly done so.  See, e.g., Charter Fairmount Inst., Inc. v. Alta Health Strategies, 835 F. Supp. 233, 237 (E.D. Pa. 1993) ("health care providers, once assigned the right to receive claims under an ERISA welfare benefit plan, are beneficiaries under § 1132(a)(1)(B)"); Northwestern Inst. of Psychiatry, Inc. v. Travelers Ins. Co., No. 92-1520, 1992 U.S. Dist. LEXIS 13700 (E.D. Pa. Sept. 3, 1992) ("in light of the alleged assignment of benefits under the Plan," an insurer "may be deemed a beneficiary" under ERISA "and may, therefore, assert a claim under § 1132(a)(1)(B)" of ERISA); Bryn Mawr Hosp. v. Coatesville Elec. Supply Co., 776 F. Supp. 181, 184 (E.D. Pa. 1991) ("jurisdiction over [an ERISA] suit brought by an assignee of plan benefits was proper"); Rehabilitation Inst. of Pittsburgh v. Blue Cross & Blue Shield of N.W. Va., Inc., 1984 U.S. Dist. LEXIS 24780 at *6-7 (W.D. Pa. July 27, 1984) (plaintiff health care provider, as the assignee of the rights of a plan participant, "stands in the shoes of a participant" and thus has standing to sue an insurer under § 502(a) of ERISA); Neuner v. Horizon Blue Cross Blue Shield of N.J., 301 B.R. 662, 682 (Bankr. D.N.J. 2003) (adopting the holding of "[n]umerous district courts in this circuit" that "health care providers have standing to sue under § 1132(a)(1)(B) where there has been an assignment of rights under the plan")..

THE BEINHAKERMILLER LAW FIRM, LLC

414 Westfield Avenue
Westfield, NJ 07090
908.272.2232 – Fax: 908.233.4546

a benefit" under the plan.  29 U.S.C. § 1002(8).  ERISA further provides that a "beneficiary" is entitled to bring litigation to collect benefits owed under the plan.  29 U.S.C. § 1132(a)(1)(B).  Through the operation of these provisions of ERISA, Dr. Cohen, by virtue of the assignment of benefits that he received from the Patient, is entitled to bring this litigation.

Thus when Defendants argue that the subscriber agreements' anti-assignment provisions deprive Cohen of standing, Defendants are arguing that language in a contract defeats the operation of a federal statute, ERISA.  This argument fails because ERISA preempts the operation of any body of state law (including state contract law concerning anti-assignment provisions)..

This issue was addressed by the Bankruptcy Court in Neuner v. Horizon Blue Cross Blue Shield of N.J., 301 B.R. 662 (Bankr. D.N.J. 2003).  The Neuner Court considered the question of whether health care providers have standing to sue Horizon as beneficiaries under § 502(a) of ERISA.  Following the "overwhelming weight of authority among other circuits" and "[n]umerous district courts in this circuit," the Neuner Court held that health care providers "have standing to sue Horizon under ERISA provisions."  Id. at 682.  The Neuner Court  noted that on an earlier motion for summary judgment, the Court had "determined under New Jersey law" that "the anti-assignment clause in the various Horizon plans are valid and enforceable."  Id. at 682 n.16.  Yet on this issue, the Neuer Court held that its earlier determination "does not apply to medical plans governed by ERISA" because the requirements of ERISA "preempt state law."  Id.

Thus even if the anti-assignment provision in the QCC/ Comcast subscriber agreement was effective as a matter of state contract law, those anti-assignment provisions should not defeat the provisions of ERISA that grant Dr. Cohen standing to sue by virtue of having received assignments from the Patient.  As a matter of ERISA law, Dr. Cohen has standing to bring his claims against the Defendants as a "beneficiary" under § 502(a) of ERISA. In the recent opinion of  The Honorable Susan Wigenton, U.S.D.J., in Ambulatory Surgical Center of New Jersey v. Horizon Healthcare Services, 2008 U. S. Dist. Lexus 13370 (D. N.J. February 21, 2008) (attached to Defendants brief as

THE BEINHAKERMILLER LAW FIRM, LLC
414 Westfield Avenue
Westfield, NJ  07090
908.272.2232 – Fax: 908.233.4546

Exhibit D)  Judge Wigenton "deems Horizon's anti-assignment provision unenfoceable as a matter of law." Id. at 17 -18.   The Judge makes it clear that this ruling was independent of her second basis of standing based upon waiver and estoppel, a factual determination. Id.

**B.     The Anti-Assignment Provisions of Defendants' Subscriber Agreements Do Not Necessarily Deprive Dr. Cohen of Standing to Bring This Action Because Through their Course of Conduct Defendants Could Have   Waived Those Provisions and May be Equitably Estopped From Arguing That the Patient's Assignment of Benefits Is Void.**

Further, the anti-assignment provisions of Horizon's subscriber agreements do not necessarily preclude Dr. Cohen from attaining standing. In an entire body of case law, stemming from Judge Greenaway's opinions in <u>Gregory Surgical Services v. Horizon Blue Cross Blue Shield of New Jersey</u>, 2006 WL1541021 ( D.N.J.)(June 1, 2006) through to Judge Wigenton's <u>Ambulatory Surgical Center,</u> District Courts in New Jersey have recognized the concepts of waiver and estoppel both by action and by inaction and allowed Health Care Providers facing anti-assignment clauses to plead and re plead facts sufficient to defeat a 12(b)(6) motion through a dismissal without prejudice rather than suffer the harsh remedy of a dismissal with prejudice. Contrary to Defendants' characterization of the facts in this case, Dr. Cohen's office did not have a single phone call with IBC and its local representative Blue Card regarding its dealings on the Patient.  To the contrary, Dr. Cohen's office was in continued contact with IBC and their agent and designated point, Blue Card . Moreover, Dr. Cohen wasn't about to perform $143,000 plus worth of surgery if he didn't expect to be paid by IBC and to be paid a reasonable fee. He relied upon the approvals of the surgical procedures and the representations that these surgeries would be paid for. Consequently, he detrimentally relied upon the representations of IBC.  The transmittal of records, claims, the appeals and its efforts to get this issue resolved can be detailed if necessary. This Court should be aware of the number and frequency of contacts between Dr. Cohen's office and the opportunities the Defendants had to raise the issue of this anti-assignment provision with both Dr. Cohen and the Patient, instead of acting as if it didn't exist up to the filing of their motion to dismiss..

THE BEINHAKERMILLER LAW FIRM, LLC

414 Westfield Avenue
Westfield, NJ  07090
908.272.2232 – Fax: 908.233.4546

In Judge Greenaway June 1, 2006 opinion in <u>Gregory Surgical</u>, he held that a course of dealings constitute waiver of an anti-assignment provision under New Jersey law, as follows:

> The Superior Court of New Jersey, Appellate Division addressed the issue of waiver of an anti-assignment provision in <u>Garden State Bldgs., L.P. v. First Fid. Bank, N.A.,</u> 305 N.J. Super. 510, 523 (N.J. Super. Ct. App. Div. 1997), <u>cert. denied</u>, 153 N.J. 50 (1998).  The court held that New Jersey recognized such a theory: 'an anti-assignment clause may be waived by a written instrument, a course of dealing, or even passive conduct, i.e., taking no action to invalidate the assignment vis-a-vis the assignee.'"

<u>Gregory Surgical</u> 2006 WL 1541021 at p.2

A case on point is <u>Hermann Hospital v. MEBA Med & Benefits Plan,</u> 959 F. 2d 569 (5th Cir 1992) in which a patient assigned her rights to receive benefits to her health care provider . The health care provider's office kept in touch with the insurer for three years while it tried to work out a resolution of the claim. It was only after the provider filed a lawsuit for fees that the insurer surfaced with an anti-assignment provision. The Court held that the insurance company was estopped from raising the anti-iassigment clause because it remained silent for so long and knew that the provider was relying on the assignment to get paid. Id. at 574. <u>Hermann</u> shows that, that principles of waiver and estoppel are fully applicable to ERISA plans. <u>Hermann</u> also shows that a long standing relationship and continuous course of conduct such as set forth in <u>Gregory Surgical</u>, and <u>Ambulatory Surgical</u> is not necessary to constitute a waiver or estoppel. Plaintiffs acknowledge that at this juncture the few paragraphs devoted to this issue scattered throughout the Amended Complaint do not yet meet this test. However, Plaintiffs ask this Court for an opportunity to replead this Count to establish those facts detailing its interactions with IBC and Blue Card including its continuous interactions with Blue Card on this and on other out of state "Blue "entities (which in itself constitutes a longstanding continuous course of dealing) so that a trier of fact can judge Defendants on their merits. Under this theory the amendment would neither be inequitable or futile. <u>Grayson v. Mayview State Hosp.,</u> 293 F.3d 103, 108 (3rd Cir. 2002). If this Court is not inclined to follow Judge Wigenton's lead and find

THE BEINHAKERMILLER LAW FIRM, LLC
414 Westfield Avenue
Westfield, NJ 07090
908.272.2232 – Fax: 908.233.4546

the anti- assignment clause unenforceable as a matter of law, Plaintiffs ask that any dismissal be without prejudice.

## II.

### PLAINTIFFS HAVE PROPERLY PLED A CLAIMS AGAINST IBC

**A.      Plaintiffs Have Properly Stated a Cause of Action for Defendants Failure to Provide Required Disclosures under ERISA**

Defendants argue that Plaintiffs have failed to state a cause of action for failure to provide required disclosures under ERISA, because Dr. Cohen's requests for information on behalf of the Patient is inadequate to trigger the Disclosure Requirement of ERISA. The cases cited in Defendants' brief at pp. 13-14 don't stand for that proposition at all.  <u>Graden v. Conexant Systems Inc.</u> 496 F. 3d 291, 302-303 (3d Cir. 2007) holds that a fiduciary cannot be held liable for failure to supply information to someone who had "cashed out" of the Plan.  <u>Daniels v.Thomas &  Betts</u>, 263 F. 3d 66, 77 (affirms the fining of a plan administrator for failure to produce requested documents but reduces the fine from $30,000 to $26,100 for the 261 days, after the 30 day grace period allowed for document production); <u>Haberen v. Kaupp Surgical Ltd</u> 24 F. 3d. 1491, 1504-06 (simply stands for the proposition that something concrete must be requested, not that it must be the subscriber making the as Defendants suggest); <u>Pane v. RCA,</u> 868 F. 2d. 631, 638-39 (3d Cir. 1989) (the Court held that Pane's requests for benefits was not the same as a request for information).

On April 20, 2008, Dr. Cohen wrote to Blue Card, the entity it was instructed to deal with an Appeal on behalf of the Patient specifically requesting information and documents relating to the less than 4% reimbursement which IBC authorized. Excerpts of that letter read:

> …When reviewing the reimbursement that you allowed for this surgery, there was no regard or consideration given to the complexity of the procedure performed or to the geographical area that the services were rendered in. **We are requesting the fee schedule that you used to determine this reimbursement as Usual & Customary in the event that we need to appeal this to the second level for further intervention.** (emphasis added)

THE BEINHAKERMILLER LAW FIRM, LLC
414 Westfield Avenue
Westfield, NJ  07090
908.272.2232 – Fax: 908.233.4546

The letter continues:

> I have been advised by a provider representative at Blue Card, that the home plan Independence Blue Cross declined to use the allowed amount that was suggested to them by Blue Card….

In addition to having requested specific documentation, the fee schedule that IBC used in establishing the amount of the allowed claim, this letter indicates (at least for the purposes of a 12 (b)(6) motion  that IBC exercised discretion in refusing to pay the allowed rate suggested by Blue Card.

The kind of information that Dr. Cohen sought and seeks to obtain from IBC on behalf of the Patient – information concerning the means by which IBC determined the amounts of benefits – is precisely the kind of information whose disclosure to plan beneficiaries ERISA requires.  In Opinion 96-14 A, 1996 ERISA LEXIS 26 (July 31, 1996), the United States Department of Labor emphasized the importance of the disclosure of information concerning information used as a basis for determining the dollar amount that will be paid for health claims made under an ERISA plan. The Department of Labor explained that the "legislative history of ERISA suggests that plan participants and beneficiaries should have access to documents that directly affect their benefit entitlements under an employee benefit plan." Id. at *3.  In light of the strong interest in disclosure of such information as set forth by the Department of Labor, IBC should be viewed as an administrator for purposes of requiring disclosure of such information, because such information is a crucial element of the discretionary decision-making authority that IBC apparently exercised over the plan in question.

THE BEINHAKERMILLER LAW FIRM, LLC

414 Westfield Avenue
Westfield, NJ  07090
908.272.2232 – Fax: 908.233.4546

**B.      Plaintiffs Have Properly Stated a Cause of Action for IBC's  Breach of Fiduciary Duty Under ERISA**

Defendants also argue that Plaintiffs have failed to state a cause of action for breach of fiduciary duty under ERISA against IBC, contending that IBC is not an ERISA fiduciary.  <u>See</u> Defendant's Br. at 12-13.  Contrary to Defendants' assertions, IBC is a fiduciary under ERISA because IBC exercises discretionary authority in the administration of an ERISA plan. ERISA defines a "fiduciary" as any person or entity that "exercises any discretionary authority or discretionary control respecting management of such plan" or "any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002 (21)(A).  See, <u>Briglia v. Horizon Healthcare Services, Inc,</u> 2005 U..S. Dis. LEXUS 1870, 2005 WL 1140687, at 6 (D.N.J.) "The lynchpin of fiduciary status under ERISA is discretion." Id. quoting  <u>Curcio v. John Hancock Mut. Life Ins. Co.,</u> 33 F. 3d 226, 233 (3d Cir. 1994).

Here, without any discovery the Court can already see that IBC made discretionary decisions by rejecting the recommendation of its local Blue Card representative in what to allow; in conducting and deciding the appeal and the second level appeal; in deciding not to furnish the information requested by Dr. Cohen on behalf of the Plaintiff. These decisions, especially the rejection of a local Blue Card in the amount to be paid instead paying $5,100 on a $143,000 plus claim is not merely ministerial.

The late surfacing Plan documents would suggest that if this were indeed the Plan scheduled amounts on which the payment was based, and IBC had no discretion a copy of the schedule should have been forwarded to the Plaintiffs within 30 days of the request. According to the Plan documents and the August 13, 2010 letter to the Patient, IBC apparently allows "in network preferred" and "out of network" the same amount for each procedure. Thus all providers paid by IBC should logically be paid or at least allowed the same for each procedure. Forgetting for the moment the confusing language of the Plan schedule of 80% (of what figure) to be reimbursed. If, as IBC claims its role is

THE BEINHAKERMILLER LAW FIRM, LLC

414 Westfield Avenue
Westfield, NJ  07090
908.272.2232 – Fax: 908.233.4546

purely ministerial and it goes by a set schedule for each procedure then it should have no problem disclosing that schedule.

Although perhaps inartfully drafted, the Amended Complaint does allege that different Providers do get paid different allowances and from the comments of the local Blue Card representative it can be gleaned IBC has some role in that decision. Several Courts have found that when an insurer exercises discretion in the administration or management of an ERISA plan, such an insurer can be held liable for breaches of the insurer's fiduciary duties under ERISA.

For example, in IT Corp. v. General Am. Life Ins. Co., 107 F.3d 1415 (9th Cir. 1997), cert. denied, 522 U.S. 1068 (1998), an ERISA plan alleged that an insurer had breached its fiduciary duties under ERISA by paying out a large sum of money to a claimant who was ineligible for benefits.  The insurer argued that it was not a fiduciary as defined by ERISA, contending that it performed "purely ministerial functions" within the framework of the plan.  Id. at 1419.  The court held that the insurer was indeed a fiduciary as defined by ERISA because the insurer's "decisions about claims would have to have involved plan interpretation and judgment."  Id.  The court noted that even though the plan sponsor had the "final authority" to authorize or disallow benefits in disputed cases, the insurer was nonetheless a fiduciary under ERISA because the insurer wielded power to interpret the plan when making its coverage decisions.  See id. at 1420.

Similarly, in Chiera v. John Hancock Mut. Life Ins. Co., 2001 U.S. App. LEXIS 1917 (6th Cir. Feb. 2, 2001), an insurer argued that it was not a fiduciary under ERISA because the contractual language of the plan did not grant the insurer any discretionary authority.  Noting that status as an ERISA fiduciary "does not turn upon formal designations," the court concluded that "when an insurance company administers claims for employee welfare benefit plans and has authority to grant or deny claims, the insurance company is a 'fiduciary' for ERISA purposes."  Id. at *10-11.  The fact that the insurer was the entity that either accepted or rejected claims in the first instance was sufficient to make the insurer subject to liability as a fiduciary under ERISA.  See also In re Blue

THE BEINHAKERMILLER LAW FIRM, LLC

414 Westfield Avenue
Westfield, NJ 07090
908.272.2232 – Fax: 908.233.4546

Cross of Western Pa. Litig., 942 F. Supp. 1061, 1064-65 (W.D. Pa. 1996) (holding that an insurer is a fiduciary under ERISA because claims were submitted to the insurer, the insurer processed the claims, the insurer notified the insured of its decisions, and the insurer sent the reimbursement money); Arber v. Equitable Beneficial Life Ins. Co., 889 F. Supp. 194, 198-99 (E.D. Pa. 1995) (holding that an insurer is an ERISA fiduciary because it exercises discretion to decide whether a medical expense is covered).

Moreover, Defendants reliance on ALA, Inc. v. CCAIR, Inc, 29 F. 3d 855, 859 n.8 (3d Cir. 1994) is taken out of context. ALA has nothing to do with ERISA or the merits of the case. Again, if the Court needs more specificity on IBC's involvement in this claims process it can be expanded. Certainly, Defendants have not demonstrated that under any eventuality IBC could not be deemed a fiduciary.

**C.     The Patient Can Seek Payment of Benefits Under a Breach of Fiduciary Duty.**

Defendants argue that the Patient cannot state a claim for Defendants' violations of  fiduciary duties because seeks money damages (as opposed to "appropriate equitable relief" under ERISA) and does not seek relief for the benefit of the plan (as opposed to the benefit of Plaintiff itself). Defendants Br. at 15-16.  . Defendants are correct that a civil action for breach of fiduciary duty under § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), may only seek equitable relief as required by the cross-referenced § 409 of ERISA, 29 U.S.C. §1104(a)(1).  Yet Congress did not intend for § 409 of ERISA to "contain the exclusive set of remedies for every kind of fiduciary breach."  Variety Corp. v. Howe, 516 U.S. 489, 511 (1996) (Breyer, J.).  "ERISA specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims, one that is outside the framework of the *second* subsection and cross-referenced § 409, and one that runs directly to the injured beneficiary, [namely] § 502(a)(1)(B)."  Id. at 512 (emphasis in original).  Thus the Patient, as "beneficiary" under ERISA, has standing under § 502(a)(1)(B) of

THE BEINHAKERMILLER LAW FIRM, LLC
414 Westfield Avenue
Westfield, NJ 07090
908.272.2232 – Fax: 908.233.4546

ERISA to bring a civil action against Defendants including IBC "to recover benefits due" to Patient under the terms of the plan.

## **COUNT FIVE IS PREEMPTED BY ERISA**

Plaintiffs concede that Count V is preempted by ERISA.

## **CONCLUSION**

For the foregoing reasons, this Court should deny at least partially the Defendants' motion to dismiss the Amended Complaint.

Respectfully submitted,

By:  /s/ Mark D. Miller_____
        MARK D. MILLER, ESQ.
        The BeinhakerMiller Law Firm
        (MM7450)

Dated:  April 26, 2011

**THE BEINHAKERMILLER LAW FIRM, LLC**
414 Westfield Avenue
Westfield, NJ  07090
908.272.2232 – Fax: 908.233.4546

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 1541021 (D.N.J.)
**(Cite as: 2006 WL 1541021 (D.N.J.))**

**H**Only the Westlaw citation is currently available.NOT FOR PUBLICATION

United States District Court,
D. New Jersey.
GREGORY SURGICAL SERVICES, LLC, individually and on behalf of all those similarly situated,
Plaintiffs,
v.
HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC., Defendant.

No. Civ.A. 06-462(JAG).
June 1, 2006.

Bruce Heller Nagel, Robert H. Solomon, Nagel Rice & Mazie, LLP, Roseland, NJ, for Plaintiffs.

Edward S. Wardell, Kelley, Wardell, Craig, Annin & Baxter, LLP, Haddonfield, NJ, for Defendant.

OPINION
GREENAWAY, Jr., U.S.D.J.
  *1 This matter comes before the Court on the motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), Plaintiff's Complaint for failure to state a claim upon which relief can be granted by Defendant Horizon Blue Cross Blue Shield of New Jersey, Inc. ("Horizon"). For the reasons set forth below, this motion will be granted.

INTRODUCTION
  Plaintiff Gregory Surgical Services, LLC is a provider of ambulatory surgical care. Horizon provides health insurance to subscribers under various health insurance contracts. Horizon also contracts with medical providers for medical services to subscribers. Plaintiff has no such contracts with Horizon and is known as a "non-participating provider."

  In December of 2005, Plaintiff filed a Complaint in New Jersey Superior Court, alleging that it has received inadequate reimbursements from Horizon for services it provided to Horizon subscribers. In January of 2006, Horizon removed the action to federal court. At the same time, Horizon filed the instant motion to dismiss. In the alternative, Horizon moved for summary judgment. In response, Plaintiff filed a cross-motion for partial summary judgment.

ANALYSIS
I. Governing Legal Standards

A. *Standard for a* Rule 12(b)(6) *Motion to Dismiss*

  On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir.1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium,* 214 F.3d 395, 397 (3d Cir.2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

  While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Sutton v. United Airlines, Inc.,* 527 U.S. 471, 475, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). All reasonable inferences, however, must be drawn in the plaintiff's favor. *See Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). Moreover, "[t]he pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir.2005).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1541021 (D.N.J.)
**(Cite as: 2006 WL 1541021 (D.N.J.))**

**\*2** The Supreme Court has characterized dismissal with prejudice as a "harsh remedy." *New York v. Hill,* 528 U.S. 110, 118, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile. "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir.2002).

**II. Defendant's 12(b)(6) Motion to Dismiss**

**A. *Does Plaintiff have standing to sue?***

Horizon argues that the Complaint must be dismissed because Plaintiff is not a party to any contract with it and thus has no standing to sue for reimbursement. In response, Plaintiff asserts two legal theories to establish standing to bring suit under subscriber health insurance contracts: 1) non-participating providers may have standing as assignees of the contracts; and 2) non-participating providers may have standing as third-party beneficiaries of the contracts.

**1. *The assignee theory***

Plaintiff admits that the contracts contain a provision which prohibits assignment to non-participating providers. Plaintiff does not dispute the validity of the anti-assignment provision, which was carefully examined and upheld as valid by the Superior Court of New Jersey, Appellate Division in *Somerset Orthopedic Assocs., P.A. v. Horizon Blue Cross & Blue Shield of N.J.,* 345 N.J.Super. 410, 415, 785 A.2d 457 (N.J.Super.Ct.App.Div.2001). Rather, Plaintiff attempts to escape the effect of the anti-assignment provision through theories of waiver and estoppel. In its opposition brief, Plaintiff alleges that subscribers have assigned their rights to payment under the contracts to Plaintiff, and that Horizon has "conducted itself as if those assignments were effective." (Pl.'s Opp. Br. 14.) Plaintiff contends that Horizon, by such conduct, has waived its right to object to the assignment of benefits to Plaintiff. Plaintiff also argues that, because of Horizon's conduct, it is equitably estopped from arguing that the assignments are void.

The New Jersey Supreme Court has stated the basic principles of waiver under New Jersey contract law:

> Waiver is the intentional relinquishment of a known right. Waiver must be voluntary and there must be a clear act showing the intent to waive the right. Furthermore, waiver presupposes a full knowledge of the right and an intentional surrender.

*County of Morris v. Fauver,* 153 N.J. 80, 104-105, 707 A.2d 958 (1998) (citations omitted).

The Superior Court of New Jersey, Appellate Division addressed the issue of waiver of an anti-assignment provision in *Garden State Bldgs., L.P. v. First Fid. Bank, N.A.,* 305 N.J.Super. 510, 523, 702 A.2d 1315 (N.J.Super.Ct.App.Div.1997), *cert. denied,* 153 N.J. 50, 707 A.2d 153 (1998). The court held that New Jersey recognized such a theory: "an anti-assignment clause may be waived by a written instrument, a course of dealing, or even passive conduct, i.e., taking no action to invalidate the assignment vis-a-vis the assignee." *Id.*

**\*3** In its opposition brief, Plaintiff alleges that Horizon waived the anti-assignment clause by the above-mentioned course of dealing, thus raising a theory of standing to sue as assignee. (Pl.'s Opp. Br. 17-21.) Were these allegations made in the Complaint, they could state a valid claim for relief under New Jersey law. The problem is that they are not in the Complaint, which does not set forth sufficient information to permit an inference that the elements of the waiver theory exist.

The New Jersey Supreme Court has stated the basic principles of equitable estoppel under New Jersey contract law:

> Equitable estoppel is [t]he effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might otherwise have existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse.

*County of Morris,* 153 N.J. at 104, 707 A.2d 958. Plaintiff's Complaint does not allege facts which

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1541021 (D.N.J.)
**(Cite as: 2006 WL 1541021 (D.N.J.))**

permit an inference that the element of detrimental reliance exists.

The Complaint is deficient and fails to allege sufficient facts to support what may be determined to be viable theories of standing. The Complaint will be dismissed without prejudice, and Plaintiff will be granted leave to amend within 45 days.

*2. The third-party beneficiary theory*
In the alternative, Plaintiff contends that it has standing to sue as a third-party beneficiary of the contract. The Complaint claims simply that Plaintiff is a third-party beneficiary of the subscriber contracts. (Compl.4.) Yet it is beyond doubt that Plaintiff can prove no set of facts in support of this claim which would entitle it to relief. In New Jersey, the test to determine whether a party is a third-party beneficiary is "whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts." *Strulowitz v. Provident Life & Cas. Ins. Co.,* 357 N.J.Super. 454, 459, 815 A.2d 993 (N.J.Super.Ct.App.Div.2003). As Horizon observes, the presence of the anti-assignment provision establishes conclusively that Horizon did not intend that non-participating providers should receive a benefit which might be enforced in the courts. The Superior Court of New Jersey, Law Division made exactly this point in *Parkway Ins. Co. v. N.J. Neck & Back,* 330 N.J.Super. 172, 187, 748 A.2d 1221 (N.J.Super. Law Div.1998). Plaintiff thus can prove no set of facts in support of any claim under a third-party beneficiary theory.

III. The parties' motions for summary judgment
Horizon has moved in the alternative for summary judgment, and Plaintiff has moved for partial summary judgment. Because this Court grants Horizon's motion to dismiss the Complaint, the two summary judgment motions are moot.

*CONCLUSION*
Defendant moves to dismiss Plaintiff's Complaint, pursuant to FED. R. CIV. P. 12(b)(6), contending that Plaintiff is not a party to any contract with Horizon and thus lacks standing to sue. The Complaint does not allege facts sufficient for this Court to infer that standing exists. Defendant's motion to dismiss Plaintiff's Complaint is granted, and the Complaint is dismissed without prejudice. Plaintiff is granted leave to amend the Complaint within 45 days of the filing of

this Opinion. Horizon's motion, in the alternative, for summary judgment is denied as moot. Plaintiff's motion for partial summary judgment is denied as moot.

D.N.J.,2006.
Gregory Surgical Services, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.
Not Reported in F.Supp.2d, 2006 WL 1541021 (D.N.J.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

THE BEINHAKERMILLER LAW FIRM, LLC
414 Westfield Avenue
Westfield, New Jersey 07090
(908) 272-2232
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. JASON M. COHEN, M.D., F.A.C.S., as assignee of James Powers-Hill, and JAMES POWERS-HILL | Civil Action No.: 3:10-CV-04910-FLW-TJB |
| Plaintiff, | |
| vs. | **CERTIFICATION OF MARK D. MILLER** |
| INDEPENDENCE BLUE CROSS,QCC INSURANCE COMPANY and COMCAST CORPORATION | |
| Defendant. | |

1.      I am a member in the BeinhakerMiller Law Firm, LLC, the attorneys for the Plaintiffs.

2.      Annexed hereto as Exhibit "A" is a true copy of the April 20, 2009 letter from Professional Orthopaedic Associates written on behalf of the Plaintiff to Blue Cross/Blue Shield Blue Card referenced in the Amended Complaint.

3.      Annexed hereto as Exhibit "B" is a true copy of the letter dated August 13, 2009, the denial of the Patient's second level appeal, from Independence Blue Cross to Mr. James Powers-Hill referenced in the Amended Complaint.

4.      Annexed hereto as Exhibit "C" is a true copy of the Explanation of Benefits, with a copy of the check, from Independence Blue Cross to James Powers-Hill dated April 2, 2009 as referenced in the Amended Complaint.

*(vertical left margin text)* THE BEINHAKERMILLER LAW FIRM, LLC   414 Westfield Avenue   Westfield, NJ 07090   908.272.2232 – Fax: 908.233.4546

5.      Annexed hereto as Exhibit "D" is a true copy of the Operative Report from Dr. Jason Cohen dated November 5, 2008 as referenced in the Amended Complaint which was submitted with the claim.

I hereby certify that the foregoing, to the best of my knowledge, is true and correct.

Mark D. Miller

Dated: April 26, 2011

**THE BEINHAKERMILLER LAW FIRM, LLC**
414 Westfield Avenue
Westfield, NJ  07090
908.272.2232 – Fax: 908.233.4546

# EXHIBIT A



# Professional Spine
# and
# Scoliosis Center

*at Professional Orthopaedic
Associates*

## Jason D. Cohen, MD, FACS

Board Certified
Fellowship Trained
Orthopaedic Spinal Surgeon

Diplomate
American Board of Spine Surgery

*Scoliosis*

*Spinal Surgery*

*Neck Surgery*

*Spinal Deformity*

*Herniated Discs*

*Spinal Stenosis*

*Spinal Tumors and Fractures*

*Spinal Reconstructive Fusions*

*Office Locations*

**Tinton Falls, New Jersey  07724**
776 Shrewsbury Avenue, Suite 201
Tel: (732) 530-4949
Fax: (732) 530-3618

**Toms River, New Jersey  08753**
1430 Hooper Avenue, Suite 101
Tel: (732) 341-6777
Fax: (732) 349-7722

**Freehold, New Jersey  07728**
303 West Main Street
Tel: (732) 577-0027
Fax: (732) 577-0036

www.professionalortho.com

April 20, 2009

Blue Cross/Blue Shield Blue Card
PO Box 1301
Neptune, NJ 07754

Att:    Appeals Dept

Re:         James Powers-Hill
ID #:        CDQ5011790501
DOS:        11/03/08
PROVIDER #: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

Dear Sir or Madam:

I am appealing the processing of the claim for the above-
mentioned patient for surgery performed on 11/03/08 by Dr. Jason
Cohen.

Mr. Powers-Hill underwent a Anterior retroperitoneal approach to
the lumbar spine, anterior lumbar diskectomy, anterior lumbar
interbody arthrodesis, anterior spinal instrumentation, L5-S1,
anterior interbody device, L5-S1, infuse recombinant bone
morphogenic protein, posterolateral arthrodesis L5-S1, left L5-S1
laminoforaminotomy, posterior segmental instrumentation, L5-S1
local autogenous bone grafting and somatosensory evoked
potential monitoring of upper and lower extremities x4 additional
hours.

**I am appealing the ridiculously low amount that you have allowed on all the
following procedure codes.**

**22558-** You paid $943.88 for this procedure and the U & R for this
geographical area is $30,455.00.
**63030-** You paid $459.22 for this procedure and the U & R for this
geographical area is $17,927.00.
**22612-**You paid $1,479.23 for this procedure and the U & R for this
geographical area is $30,455.00.
**22845 -** You paid $736.95 for this procedure and the U & R for this
geographical area is $15,227.00.
**22851-**You paid $478.67.00 total for these two procedures and the U & R for
this geographical area is $8,957.00.
**22840**– You paid $745.95 for this procedure and the U & R for this
geographical area is $15,227.00.

Professional Orthopaedic Associates utilizes a standard method for calculating
our fee schedules based on a customized analysis done for our practice by
Ingenix. When reviewing the reimbursement that you allowed for this surgery,
there was no regard or consideration given to the complexity of the procedure



*at Professional Orthopaedic
Associates*

### Jason D. Cohen, MD, FACS

Board Certified
Fellowship Trained
Orthopaedic Spinal Surgeon

Diplomate
American Board of Spine Surgery

*Scoliosis*

*Spinal Surgery*

*Neck Surgery*

*Spinal Deformity*

*Herniated Discs*

*Spinal Stenosis*

*Spinal Tumors and Fractures*

*Spinal Reconstructive Fusions*

*Office Locations*

**Tinton Falls, New Jersey  07724**
776 Shrewsbury Avenue, Suite 201
Tel: (732) 530-4949
Fax: (732) 530-3618

**Toms River, New Jersey  08753**
1430 Hooper Avenue, Suite 101
Tel: (732) 341-6777
Fax: (732) 349-7722

**Freehold, New Jersey  07728**
303 West Main Street
Tel: (732) 577-0027
Fax: (732) 577-0036

**www.professionalortho.com**

performed or to the geographical area that the services were rendered in. We are requesting the fee schedule that you used to determine this reimbursement as Usual & Customary in the event that we need to appeal this to the second level for further intervention.

I have been advised by a provider representative at Blue Card, that the home plan Independence Blue Cross declined to use the allowed amount that was suggested to them by Blue Card.

I have attached the Fee Analysis by Ingenix for the U & R for this geographical area at the 95th percentile to be used as a reference when reviewing the amounts paid for these services.

Please reprocess this claim as per the attached information. If any further information is needed please do not hesitate to contact me at (732) 341-6777 ext 125.

Sincerely,


Sheree Roth
Billing Specialist

# EXHIBIT B



www.ibx.com

1901 MARKET STREET
PHILADELPHIA, PA 19103-1480

August 13, 2009

Mr. James Powers-Hill
907 Heck Street
Asbury Park, NJ  07712

RE: **Verbal, Post-Service, Second-Level Medical Necessity/Grievance**

| | |
|---|---|
| INITIATED | July 8, 2009 |
| FILE NO. | 146167 |
| MEMBER NAME | James Powers-Hill |
| MEMBER ID NO. | 50117905 |
| DATES OF SERVICE | November 3, 2008 |
| HEALTH PLAN | Personal Choice |
| FILED BY | James Powers-Hill |

Dear Mr. Powers-Hill:

The Second-Level Grievance/Medical Necessity Appeal Committee has completed its review of your appeal, and the purpose of this letter is to let you know that the committee has decided to uphold the denial. In other words, the committee confirmed the correctness of the denial.

This letter will present the grounds for this determination and review your options for moving forward.

**About your appeal.** It is our understanding that your grievance/medical necessity appeal involved your request to have the claims processed to pay the balance bills for the spinal fusion surgery with titanium plates. The procedure and inpatient care took place November 3 through November 6, 2008. The services were rendered by Dr. Jason Cohen, Professional Orthopedic Associates, and Jersey Shore Orthopedic, both out-of-network providers

**About the committee.** The panel that conducted this review comprised three people familiar with managed care operations and benefits: a Medical Director board certified in Internal/ Nuclear Medicine, a Senior Director in Care Management and a Manager in Care Management.

## THE COMMITTEE'S DETERMINATION

The Second-Level Appeal Committee found that based on the information available at the time of this review, the medical necessity to go to nonparticipating providers has not been established.

The committee based this determination on your health plan's benefits, terms, limitations, and exclusions pertaining to your request, as well as on the following types of information:

- the plan medical policy; or relevant plan guidelines
- the information presented by you or on your behalf;
- the available clinical documentation.

Independence Blue Cross offers products directly, through its subsidiaries Keystone Health Plan East and QCC Insurance Company, and with Highmark Blue Shield, Independent Licensees of the Blue Cross and Blue Shield Association.



**Your benefits and exclusions**

In your member handbook or certificate, the section entitled –*"Payment of Providers"* the Personal Choice/PPO Program allows a Covered Person to obtain Covered Services from Non-Preferred, Non-Participating Providers. If a Covered Person uses a Non-Preferred, Non-Participating Provider, the Covered Person will be reimbursed for Covered Services but will incur significantly higher out-of-pocket expenses including Deductibles, Coinsurance and the balance of the provider's bill. This is true whether a Non-Preferred, Non-Participating Provider is used by choice, for level of expertise, for convenience, for location, because of the nature of the services or based on the recommendation of a provider.

The Claims Administrator may approve Covered Services provided by a Non-Preferred Provider subject to Preferred "In-Network" cost-sharing, if such cost-sharing is applicable to the program (Co-payments, Coinsurance and Deductibles), if the Covered person has:

    1.   first sought and received care from a Preferred Provider in the same American Board of Medical Specialties (ABMS) recognized specialty as the Non-Preferred Provider requested;

    2.   been advised by the Preferred Provider that there are no Preferred Providers that can provide the requested Covered Services; and

    3.   Obtained authorization from the Claims Administrator prior to receiving care.

The Claims Administrator reserves the right to make the final determination whether there is a Preferred Provider that can provide the Covered Services. If the Claims Administrator approves the use of a Non-Preferred, Non-Participating Provider, the Covered Person will not be responsible for the difference between the provider's billed charges and the Claims Administrator's payment to the Provider. Applicable program terms including medical Necessity/Appropriateness and pre-certification will apply.

**Available clinical documentation**

Here are the details of the clinical information you provided, along with the specific findings of the committee:

- You are a 48-year-old male with complications of progressively increasing back pain and left leg pain greater than right leg pain.

- You failed conservative therapy.

- Radiographs documents a transitions segments, which deemed S1-S2

- You have a collapse of the L5-S1 disk space, left side disc herniation, facet, arthopathy, foraminal stenosis.

- You had a provocative discography at the level as well.

- You have had multiple steroid injections with little to no relief.

**Your concerns**

During the Second Level Meeting; which took place on August 6, 2009, you expressed the



following concerns:

- You indicated that you asked Blue Cross for an in-network provider and they never provided you with the information.
- You indicated that you were under your doctor's care for a number of years and you were getting epidurals.
- You indicated that you went along with the surgery to get rid of the pain.
- You indicated that you were left with an outstanding bill, over $200,000.00.
- You indicated that you thought Blue Cross would have paid the bill, since the epidurals were considered experimental/investigational.

**The committee's findings**

You had a spinal fusion surgery. This could be performed by a participating board- certified spinal surgeon. This procedure does not require particular expertise to be completed by a particular out -of - network provider.

**The committee's conclusion**

After reviewing all of the above information, the committee determined that based on the plan's contract language, because the surgical procedure could have been performed by an in-network provider, you did not meet the medical necessity requirements to use a non-participating provider. Your claims processed correctly, therefore the denial is upheld.

**OPTIONS FOR MOVING FORWARD**

This decision is final unless you choose to file an external medical necessity appeal from an independent review organization (IRO). For details on this course of action, see the relevant section in *"Resolving Medical Necessity Appeals for Independence Blue Cross Enrollees"*; a copy of this document accompanied our letter of *July 17, 2009*, which acknowledged our receipt of your appeal.

Finally, if your health plan is subject to the requirements of the Employee Retirement and Income Security Act (ERISA), then following your appeal you may have the right to bring a civil action under Section 502(a) of ERISA.

**NEED MORE INFORMATION?**

We can provide any additional details or information you might need, including the following:

- **Your health plan benefits.** In your member handbook or certificate of coverage, please refer to the section entitled *"Payment of Providers"* You may also direct questions about your benefits to the Member Services Department by using the phone number on the back of your identification card.
- **Information on this determination.** Personal Choice can provide a free copy of the benefit provision, guideline, protocol, or clinical rationale used to make this decision, as well as copies of all relevant documents, records, or other information that are not confidential, proprietary, or privileged. Such information is provided to you or your designee at no charge. To request such



information — or if you have any other questions related to this appeal — please feel free to contact Appeals directly using the following information:

Member Appeals
Box 41820
Philadelphia, PA 19101-1820
Telephone: 1-888-671-5276
Fax: 1-888-671-5274

- **Information on other matters.** If you have a question for us about matters unrelated to this appeal, please contact Member Services using the phone number on the back of your identification card.

\*   \*   \*   \*

We hope this letter proves helpful in your efforts to resolve this matter.

Sincerely,

*Kellie Barnes*

Kellie Barnes

Member Appeals Committee Representative

# EXHIBIT C



**INDEPENDENCE BLUE CROSS**
1901 MARKET STREET
PHILADELPHIA, PA 19103-1480

0402UCDS19010002054
PAGE   1 OF   2

Independence Blue Cross offers products directly, through its subsidiaries
Keystone Health Plan East and QCC Ins. Co., and with Highmark Blue Shield –
Independent Licensees of the Blue Cross and Blue Shield Association

Code: BC     000038

POWERS HILL STEPHEN T.
907 HECK STREET
ASBURY PARK NJ 07712

For Customer Service:
Outside Philadelphia Toll Area:     1-800-898-3556
TDD Service for the Hearing Impaired: 1-888-857-4816
Manage your health care online: www.ibxpress.com

| | |
|---|---|
| Group Number: | 613255 |
| Group Name: | COMCAST (CABLE) |
| ID Number: | 5011790500 |
| Check Number: | 3104338378 |
| Date: | 4/02/2009 |

This is your Explanation of Benefits (EOB).  The claims listed below are included on this EOB.
Please see claim details beginning on the next page.

| PATIENT NAME | CLAIM NUMBER | BILLED CHARGES | YOUR RESPONSIBILITY | COVERED BENEFIT AMOUNT |
|---|---|---|---|---|
| JAMES M POWERS-HILL | IG03250900311 | $143,626.00 | $138,502.10 | $5,123.90 |
| TOTALS | | $143,626.00 | $138,502.10 | $5,123.90 |

**PAYMENT SUMMARY**

NET CLAIM AMOUNT:                    $5,123.90

TOTAL AMOUNT DISBURSED:               $5,123.90

SERVICES WERE PAID ON YOUR BEHALF BY QCC INSURANCE COMPANY
EOBS WILL NO LONGER BE ISSUED FOR ALL CLAIMS, SEE REMARK CODES.





Independence Blue Cross offers products directly, through its subsidiaries
Keystone Health Plan East and QCC Ins. Co., and with Highmark Blue Shield –
Independent Licensees of the Blue Cross and Blue Shield Association

60-162
433

**INDEPENDENCE BLUE CROSS**
1901 MARKET STREET
PHILADELPHIA, PA 19103-1480

CHECK SHELL IS PRINTED ON WHITE PAPER WITH A
BLUE SCREEN. REVERSE SIDE HAS A WATERMARK.

| DATE | CHECK NUMBER |
|---|---|
| 4/02/2009 | 3104338378 |

PAY TO
THE
ORDER
OF

POWERS HILL STEPHEN T.
907 HECK STREET
ASBURY PARK NJ 07712

$*******5123.90*

VOID 6 MONTHS FROM ISSUE DATE

PAY EXACTLY

**FIVE THOUSAND ONE HUNDRED TWENTY THREE AND 90/100 DOLLARS**

PNC BANK, NATIONAL ASSOCIATION
JEANNETTE, PA

AUTHORIZED SIGNATURE

⑈3104338378⑈ ⑈043301627⑈ ⑈017286791⑈

0402UCDS1901000205S
PAGE  2 OF  2

# Explanation of Benefits

**Customer Service:**
Outside Philadelphia Toll Area Call: 1-800-898-3556
TDD Service for the Hearing Impaired: 1-888-857-4816

Independence Blue Cross offers products directly, through its subsidiaries
Keystone Health Plan East and QCC Ins. Co., and with Highmark Blue Shield -
Independent Licensees of the Blue Cross and Blue Shield Association

## THIS IS NOT A BILL - PLEASE KEEP FOR INCOME TAX PURPOSES

MEMBER NAME
POWERS HILL STEPHEN T.

ID NUMBER
5011790500

PATIENT NAME
JAMES M POWERS-HILL

CLAIM NUMBER
IG0325090031I

DATE PROCESSED
4/02/2009

| PROVIDER NAME | DATES OF SERVICE | DESCRIPTION OF SVC | PROC CODE | NO OF SVCS | BILLED CHARGES | COVERED EXPENSE | NON-COVERED | RMK CODE | DEDUCTIBLE | CO-INSURANCE AMOUNT | COPAY | COVERED BENEFIT AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JASON D. COHEN | 11/03/08 | SURGICAL PROCEDURE | 22558 | 1 | 31,138.00 | 1,179.85 | .00 | | .00 | 235.97 | .00 | 943.88 |
| JASON D. COHEN | 11/03/08 | SURGICAL PROCEDURE | 22612 | 1 | 31,138.00 | 1,849.04 | .00 | | .00 | 369.81 | .00 | 1,479.23 |
| JASON D. COHEN | 11/03/08 | SURGICAL PROCEDURE | 63030 | 2 | 27,927.00 | 574.02 | .00 | | .00 | 114.80 | .00 | 459.22 |
| JASON D. COHEN | 11/03/08 | SURGICAL PROCEDURE | 28845 | 1 | 21,880.00 | 932.49 | .00 | | .00 | 184.24 | .00 | 736.95 |
| JASON D. COHEN | 11/03/08 | SURGICAL PROCEDURE | 22840 | 1 | 16,943.00 | 932.44 | .00 | | .00 | 186.49 | .00 | 745.95 |
| JASON D. COHEN | 11/03/08 | SURGICAL PROCEDURE | 22851 | 1 | 12,162.00 | 598.34 | .00 | | .00 | 119.67 | .00 | 478.67 |
| JASON D. COHEN | 11/03/08 | SURGICAL PROCEDURE | 20936 | 1 | 1,292.00 | 211.17 | .00 | | .00 | 42.23 | .00 | 168.94 |
| JASON D. COHEN | 11/03/08 | SURGICAL PROCEDURE | 20930 | 1 | 1,046.00 | 138.83 | .00 | | .00 | 27.77 | .00 | 111.06 |
| CLAIM TOTALS | | | | | 143,626.00 | 6,404.88 | .00 | | .00 | 1,280.98 | .00 | 5,123.90 |

YOUR RESPONSIBILITY        $138,502.10



# EXHIBIT D



**SAINT BARNABAS**
**HEALTH CARE SYSTEM**
*Monmouth Medical Center*

OPERATIVE REPORT

PATIENT NAME: POWERSHILL, JAMES
MRN: 0001150924

ADMISSION DATE: 11/03/2008

SURGERY DATE:   11/03/2008

---

**PREOPERATIVE DIAGNOSES:** L5-S1 lowest motion segment degenerative disk disease, herniated nucleus pulposus, facet arthropathy, foraminal stenosis and diskogenic pain.

**POSTOPERATIVE DIAGNOSES:** L5-S1 lowest motion segment degenerative disk disease, herniated nucleus pulposus, facet arthropathy, foraminal stenosis and diskogenic pain.

**SURGEON:** Jason D Cohen, MD

**CO-SURGEON:** Anthony Squillaro, MD

**ASSISTANT:** Kevin S Brown, PA-C, and Tyler Welch, MD

**ANESTHESIOLOGIST:** Matthew P Zlotnick, MD

**ANESTHESIA:** General endotracheal anesthesia.

**OPERATION:**
Anterior retroperitoneal approach to the lumbar spine.
Anterior lumbar diskectomy.
Anterior lumbar interbody arthrodesis.
Anterior spinal instrumentation, L5-S1.
Anterior interbody device, L5-S1, Infuse recombinant bone morphogenic protein.
Posterolateral arthrodesis L5-S1.
Left L5-S1 laminoforaminotomy.
Posterior segmental instrumentation, L5-S1 local autogenous bone grafting.
Somatosensory evoked potential monitoring of upper and lower extremities x4 additional hours.

**ESTIMATED BLOOD LOSS:** 100 mL.

**INTRAVENOUS FLUIDS:** 2500 mL lactated Ringer's.

**URINE OUTPUT:** 200 mL urine output.

**COUNTS:** Sponge, instrument and needle count correct at the end of the procedure.

**COMPLICATIONS:** No complications.

SSEP monitoring was stable throughout surgery.  Please refer to separate operative report dictated by Dr. Chabot.



**SAINT BARNABAS**
**HEALTH CARE SYSTEM**
*Monmouth Medical Center*

PATIENT NAME: POWERSHILL, JAMES
MRN: 0001150924

ADMISSION DATE: 11/03/2008

OPERATIVE REPORT

SURGERY DATE:   11/03/2008

**HISTORY:** The patient is a 47-year-old male with complaints of chronic progressively increasing back and left greater than right leg pain. Patient failed all exhaustive conservative therapy. Radiographs documented a transition segment, which we will deem S1-S2. Lowest motion segment, deeming it L5-S1. Collapse of the L5-S1 disk space, left-sided disk herniation, facet arthropathy, foraminal stenosis. Patient had positive provocative diskography at that level as well. The risks, benefits, complications and options were explained to the patient. Informed consent was obtained.

**PROCEDURE:** He was taken to the operating room on November 3, 2008. He received 2 grams of Ancef antibiotic prophylaxis. General endotracheal anesthesia was initiated. Foley catheter was placed. He was placed on the operating room table in a supine position. All bony prominences were well padded. The abdomen was prepped and draped in the usual sterile fashion. The anterior retroperitoneal approach was performed by Dr. Squillaro, please refer to separate operative report dictated by Dr. Squillaro. With access gained to the lowest motion segment, an 18-gauge spinal needle was inserted into what we will call the L5-S1 disk space. Lateral radiograph was confirmed at the appropriate level. The level confirmed based on the radiographs, MRIs and diskography that we wanted to operate on. Self-retaining retractors were inserted at this in-frame. The iliac vein was mobilized. Blunt dissection was used to clean off the anterior longitudinal ligament. Complete visualization of the disk space was then accomplished. A 10 blade was used to make a box annulotomy. Cobb elevator was used to strip the cartilaginous endplates. Complete en bloc diskectomy was performed. Straight and angled curettes were used to strip the cartilaginous endplates, clean out the ring apophysis all the way posteriorly, resect the posterior annulus to the PLL. It appeared there was a hypertrophic spur coming off the inferior portion of L5, and this was resected with Kerrison rongeur. Nerve hook could then be passed posteriorly with no further disk material extending beyond the PLL. Both the endplates appeared for interbody arthrodesis. Sequential sizing for the SynFix-LR device was performed. Appropriate size was 13.5 x 8 degree, 26 footprint. This was assembled to anterior titanium plate. The Infuse recombinant bone morphogenic protein was reconstituted and inserted into the interbody device and impacted into the L5-S1 space. The titanium plate was affixed across the L5-S1 segment with four 20-mm screws and locked into the plate. Excellent position was achieved. AP and lateral radiographs confirmed excellent position. The retractors were removed. There was no significant bleeding. Retroperitoneum was allowed to fall back into place, and the incision was then closed by Dr. Squillaro in layers. A sterile dressing was applied. The patient was sandwiched in the Jackson table and flipped to a prone position. All bony prominences were well padded. The back was prepped and draped in the usual sterile fashion. A longitudinal midline incision was made from the L4 to S1 spinous process. The skin and subcutaneous tissue were sharply incised. Hemostasis was obtained with electrocautery. The lumbodorsal fascia was identified. It was opened to the left of midline. Subperiosteal exposure was carried down to the spinous process



**SAINT BARNABAS**
**HEALTH CARE SYSTEM**
*Monmouth Medical Center*

PATIENT NAME: POWERSHILL, JAMES

MRN: 0001150924

ADMISSION DATE: 11/03/2008

## OPERATIVE REPORT

SURGERY DATE:   11/03/2008

lamina out over the facet joint to the tip of the transverse process at the L5-S1 segment. Woodson elevator was then placed cephalad, marking the L4 segment. Lateral radiograph was obtained, which confirmed position of the previous instrumentation at what we will call lowest motion segment, L5-S1. All soft tissue was removed from the posterior elements. A 3.0 angled curette was used to detach the ligamentum flavum from the superior aspect of the lamina of S1. The ligamentum flavum was resected. A hemilaminectomy was performed on the left L5 to the level of the insertion of the ligamentum. Dissection was carried lateral to the medial pedicle of S1. The S1 nerve root was freely decompressed. The superior articular process was seen to have exuberant bone into the foramen along the L5 nerve root. This was resected with 2- and 3-mm Kerrisons. Foraminotomy was performed. This freed up the nerve root. There was no remaining disk herniation or ventral compression, and a Woodson elevator could freely pass along the L5 pedicle and out the foramen and the S1 pedicle and out the foramen. Instrumentation was then inserted. Instrumentation used was the Alphatec ROC instrumentation. An entry port was made with a high-speed bur at the anatomic landmarks in the transverse process, superior articular facet and pars intraarticularis. Steffee probe was inserted down the pedicle followed by a ball-tip feeler, a 5.5-mm tap, ball-tip feeler, and a 6 x 5 x 40-mm screw. A screw was inserted in the left S1 pedicle in a similar fashion. Complete bony contact was achieved. Monitoring was stable throughout screw insertion. Excellent purchase of the screws was obtained. The ROC plate was affixed to the posterior element and posterior instrumentation. A lateral radiograph was obtained to confirm position across the L5-S1 segment. The plate was then removed. The sacral ala transition, transverse process and the L5 transverse process were decorticated along with the lateral pars and the facet joint. The local autogenous bone graft was placed in the posterolateral gutters. The plate was then applied. Locking caps were engaged and torqued to manufacturer recommendation. Copious irrigation was performed. Woodson elevator could freely be passed along the neural foramen with no further compression. Thrombin-soaked Gelfoam was placed on the laminotomy defect. The retractors were removed. Lumbodorsal fascia was then re-approximated with #1 Vicryl in a watertight fashion followed by 0 Vicryl and a running 3-0 Monocryl subcuticular suture. Then, 20 mL of Marcaine 0.5% plain were injected in the paraspinal muscles for postoperative pain control. Sterile dressing was applied. The patient was returned to a supine position, extubated, and taken to the recovery room in stable and satisfactory condition.

E- Signed by
Jason D Cohen, MD 11/05/2008 12:25

_____
Jason D Cohen, MD



**SAINT BARNABAS**
**HEALTH CARE SYSTEM**
*Monmouth Medical Center*

PATIENT NAME: POWERSHILL, JAMES

MRN: 0001150924

ADMISSION DATE: 11/03/2008

## OPERATIVE REPORT

SURGERY DATE:   11/03/2008

D: 11/03/2008
T: 11/04/2008  5:16 P
J:  ATI / 000993492/

cc:    Kevin Brown, PA
       Jason D Cohen, MD
       Anthony J. Squillaro, MD
       Tyler Welch

**THE BEINHAKERMILLER LAW FIRM, LLC**
414 Westfield Avenue
Westfield, New Jersey 07090
(908) 272-2232
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. JASON M. COHEN, M.D., F.A.C.S., as assignee of James Powers-Hill, and JAMES POWERS-HILL | Civil Action No.:  3:10-CV-04910-FLW-TJB |
| Plaintiff, | |
| vs. | **CERTIFICATION OF SERVICE** |
| INDEPENDENCE BLUE CROSS,QCC INSURANCE COMPANY and COMCAST CORPORATION | |
| Defendant. | |

I, Mark D. Miller, Esquire, do hereby certify that the foregoing Brief without Table of Citations in Opposition to Defendant's Motion to Dismiss and other supporting documents were filed electronically via the ECF system on April 26, 2011 and Brief with Table of Citations and other supporting  documents were filed electronically on April 27, 2011 and, therefore, made available to all counsel of records, as follows:

Thomas S. Biemer, Esq.
Jordon M. Rand, Esq.
DILWORTH PAXSON, LLP
457 Haddonfield Berlin Road
Suite 700
Cherry Hill, NJ 08002
*Attorneys for Defendants Independence*
*Blue Cross and QCC Insurance Company*

/s/  Mark D. Miller

Dated: April 27, 2011

**THE BEINHAKERMILLER LAW FIRM, LLC**
414 Westfield Avenue
Westfield, NJ 07090
908.272.2232 – Fax: 908.233.4546