**\*\*FOR PUBLICATION\*\***

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| JASON COHEN, M.D., F.A.C.S., as assignee of James Powers-Hill and JAMES POWERS-HILL, | : |
| Plaintiffs, | Civil Action No. 10-4910(FLW) |
| vs. | |
| INDEPENDENCE BLUE CROSS, et al., | **OPINION** |
| Defendants. | |

**WOLFSON, United States District Judge:**

Plaintiff James-Powers Hill (the "Subscriber" or "Mr. Powers-Hill"), an insured under the health insurance plan policy between defendants ComCast Corp., the Plan sponsor, QCC Insurance Co. ("QCC"), the Plan administrator, and Independence Blue Cross ("IBC"), the insurer (collectively, "Defendants"), retained the medical services of an out-of-network provider, plaintiff Jason Cohen. M.D. ("Dr. Cohen").  In the status of a purported assignee, Dr. Cohen submitted an insurance claim to Defendants for services rendered.  While a portion of the claim was paid directly to Mr. Powers-Hill, the remainder was denied.  As a result, both Plaintiffs brought this suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. 1101, et seq., to challenge the denial of benefits.  In the instant matter, all Defendants move to dismiss Counts II-V, and IBC additionally moves to dismiss Count I.  Based on the reasons that follow, the Court concludes that Dr. Cohen does not have standing to bring the claims in

1

this case and as such, all of the claims against Defendants brought by Dr. Cohen are dismissed; with respect to the claims brought by Mr. Powers-Hill, Counts II, III and V are likewise dismissed as to all defendants; and finally, IBC is dismissed as a defendant.

## BACKGROUND

On a Rule 12(B)(6) motion, the Court recounts relevant facts from the Amended Complaint and these facts are taken as true.  Mr. Powers-Hill, the Subscriber, is a beneficiary under the Personal Choice Benefit Program Plan 10 (the "Plan"). Am. Compl., ¶ 2.   He underwent spinal surgery in November 2008, which was performed by Dr. Cohen, an out-of-network, or "Non-Preferred, Non-Participating," health care provider under the Plan.  Id. at ¶¶ 2, 4.   After the surgery, Dr. Cohen received an assignment of benefits from Mr. Powers-Hill in order to collect benefits under the Plan, see Id. at ¶ 9, and indeed, Dr. Cohen submitted an insurance claim in the amount of $143,626.00 to Defendants for reimbursement in connection with the surgery he had performed on Plaintiff, as well as for other procedures.[1]

On April 2, 2009, in response to the claim made by Dr. Cohen, Defendants made a single payment to the Subscriber in the amount of $5,123.90.  This payment was later forwarded to Dr. Cohen from the Subscriber.  Id. at ¶ 13.  Notwithstanding the payment to the Subscriber, Dr. Cohen avers that throughout the pre-certification and the claims processes, Defendants dealt directly with him as the assignee of the Subscriber.  Id. at ¶ 15.  In that regard, Dr. Cohen maintains that Defendants were "aware of the assignment

_____

[1] Plaintiffs repeatedly refer to the actions of "Defendants," rather than the actions of any particular defendants.  For this Background section, the Court will refer to Defendants collectively.  However, in its legal analysis, the Court will separately discuss the claims brought against each defendant.

of benefits and approved the surgery and [have] never advised [Dr.] Cohen that [they] declined to recognize or accept the assignment . . . ." Id. at ¶ 16.

After the initial denial, Dr. Cohen filed an appeal with Defendants on April 20, 2009.  While it is not alleged in the Complaint, according to Defendants, they denied the Subscriber's "Verbal, Post-Service, Second-Level Medical Necessity/Grievance."  In that denial letter, which was sent directly to the Subscriber, Defendants reasoned:

> In your member handbook or certificates, the section entitled - "*payment of providers*" the Personal Choice/PPO Program allows a Covered Person to obtain Covered Services from Non-Preferred, Non-Participating Providers.  If a Covered Person uses a Non-Preferred, Non-Participating Provider, the Covered Person will be reimbursed for Covered Services but will incur significantly higher out-of-expenses [sic] including Deductibles, Coinsurance and the balance of the provider's bill.  This is true whether a Non-Preferred, Non-Participating Provider is used by choice, for level of expertise, for convenience, for location, because of the nature of the services or based on the recommendation of a provider.

Id. at ¶ 21; see Subscriber Appeal Letter dated, August 13, 2009.  Defendants never responded to Dr. Cohen's provider appeal. Id. at ¶ 44.  Defendants maintain that because Dr. Cohen is an out-of-network provider, he had no appeal rights.  See Id. at ¶ 23.

After the denial of the Subscriber's appeal, in September 2010, Dr. Cohen brought this suit solely on behalf of himself and named only IBC as a defendant.   In November 2010, IBC moved to dismiss the Complaint on standing grounds; in response, Dr. Cohen filed an Amended Complaint, which included the Subscriber as an additional plaintiff and QCC and ComCast as additional defendants. The Amended Complaint asserts five counts: Count I - violation of ERISA section 502(a) brought by the Subscriber; Count II - failure to provide information required by law brought by the Subscriber pursuant to ERISA;

Count III - breach of fiduciary duty brought by Subscriber;[2] Count IV - ERISA violation by Dr. Cohen; and Count V - state law claims of unjust enrichment/quantum meruit/promissory estoppel brought by the Subscriber and Dr. Cohen.

In the instant matter, IBC moves to dismiss all counts, and defendants QCC and ComCast move to dismiss all the counts except Count I. In connection with the motion, with respect to Count V, Plaintiffs concede that ERISA preempts their state law claims. See Plaintiff's Opp. Brief, p. 20. Accordingly, that count is dismissed.

## DISCUSSION

### I.    Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right

---

[2]It is unclear from the Amended Complaint whether Dr. Cohen also brought Count II and Count III. Nevertheless, because the Court finds that Dr. Cohen does not have standing, all claims brought by Dr. Cohen are dismissed.

4

to relief above the speculative level." Twombly, 550 U.S. at 555. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 555 U.S. at 555).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948-49 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1949. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). Moreover, in deciding a motion to dismiss, the court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of plaintiff's claim. Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v.

5

UPMC, No. 09-4468, 2010 WL 4840093, at *8 (3d Cir. Nov. 29, 2010).  This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy."  Id.  That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions."  Id. at *7 (quoting Ashcroft, 129 S.Ct. at 1953).

**II.    IBC**

Defendant IBC maintains that it is not a proper defendant because IBC is neither the Plan nor a plan fiduciary.  Arguing otherwise, Plaintiffs claim that because IBC exercised its discretion in connection with certain of its administrative duties, IBC should be considered a fiduciary subject to liability under ERISA.  The threshold question, then, is whether IBC acted as a fiduciary in conducting its activities during the insurance claim process.

ERISA imposes statutory duties on fiduciaries that "'relate to the proper management, administration, and investment of fund assets,' with an eye toward ensuring that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries."  LaRue v. DeWolff, Boberg & Assoc's., 552 U.S. 248, 253 (2008) (quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985)).  Accordingly, an ERISA fiduciary is required to:

> discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;

> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(A)-(B).

With respect to fiduciaries, ERISA requires each plan to have one or more named fiduciaries that are granted the authority to manage the operation and administration of the plan. See 29 U.S.C. § 1102(a)(1). Under ERISA's definition:

> a person is a fiduciary with respect to a plan to the extent

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105 (c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). Because an entity is only a fiduciary to the extent it possesses authority or discretionary control over the plan, see In re Unisys Corp. Retiree Med. Benefits ERISA Litig. (Unisys III), 579 F.3d 220, 228 (3d Cir. 2009), the relevant inquiry is " whether [the entity] is a fiduciary with respect to the particular activity in question." Srein v. Frankford Trust Co., 323 F.3d 214, 221 (3d Cir. 2003) (internal quotation omitted). "In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject

7

to complaint." <u>Pegram v. Herdrich</u>, 530 U.S. 211, 226 (2000); <u>Renfro v. Unisys Corp.</u>, No. 10-2447, 2011 U.S. App. LEXIS 17208, at *14 (3d Cir. Aug. 19, 2011).

In this case, there can be no real dispute that IBC is not the Plan itself, nor the Plan Administrator.  According to the plan documents, ComCast is identified as the Plan Administrator and QCC as the Claims Administrator.  <u>See</u> The Plan Contract, pp. 1, 16, 85. Indeed, the Plan specifically provides that only QCC, and not IBC, may be liable for the Plan's obligations under the Plan contract, <u>see</u> <u>Id.</u> at p. 85, and notably, in the description of the Plan's benefit review and determination process, IBC is not entrusted with any duties involving that process.  <u>See</u> <u>Id.</u> at pp. 86-87.

As the Court outlined above, ERISA specifically sets forth the criteria for an entity to be deemed a fiduciary.  The lynchpin of fiduciary status is discretion and discretion is a fact specific inquiry.  <u>See</u> <u>Curcio v. John Hancock Mut. Life Ins. Co.</u>, 33 F.3d 226, 233 (3d Cir. 1994).   In that regard, Plaintiffs must sufficiently allege the degree of IBC's discretion in determining the Subscriber's insurance claim – such as whether IBC "maintained any authority or control over the management of the plan's assets, management of the plan in general, or maintained any responsibility over the administration of the plan."  <u>Id.</u> at 233.  If such is the case, IBC may be considered a fiduciary, and therefore, an appropriate defendant under ERISA.  On the other hand, allegations of merely ministerial tasks, such as claims processing and calculation, would be insufficient to establish fiduciary status. <u>See</u> <u>Briglia v. Horizon Healthcare Services, Inc.</u>, No. 03-6033, 2005 U.S. Dist. LEXIS 18708, at *6 (D.N.J. May 13, 2005); <u>Confer v. Custom Engineering Co.</u>, 952 F.2d 34, 39 (3d Cir. 1991).

Here, a reading of the Amended Complaint reveals no factual support, other than

conclusory assertions, that IBC is a plan fiduciary.  Hence, the Court has no basis to adjudge the sufficiency of Plaintiffs' allegations that IBC acted as a fiduciary.  Instead, Plaintiffs highlight, in their Opposition Brief, various "discretionary decisions" made by IBC – for example, inter alia, conducting and deciding the appeal and the second level appeal, and in deciding not to furnish the information requested by Dr. Cohen on behalf of the Subscriber.  Procedurally, Plaintiffs' assertions, raised only in their brief, may not be considered by the Court on this motions since Plaintiffs may not amend their Amended Complaint via a motion brief.  Frederico v. Home Depot, 507 F.3d 188, 201 (3d Cir. 2007). Indeed, Plaintiffs admit that the Amended Complaint is inartfully drafted regarding IBC's discretionary decisions, and request the Court to provide them another opportunity to expand upon IBC's involvement.  See Pl. Opp. Brief, pp. 18-19.  However, as the current complaint stands – which is all that the Court may consider on this motion – the Court finds that Plaintiffs fail to sufficiently allege that IBC is a fiduciary under ERISA.  In that connection, because Plaintiffs had a prior opportunity to amend their complaint, at this juncture, the Court will dismiss IBC as a defendant.  If, during the course of discovery, Mr. Powers-Hill[3] obtains information that would buttress allegations of IBC's fiduciary role, he may move to amend the Amended Complaint at that time.

### III.    Choice of Law

As a preliminary matter, the parties dispute which state law applies to certain of the state law related disputes arising out of the Plan - for example, principles of adhesion contracts and waiver.  Pointing to the choice of law provision in the Plan contract,

---

[3]Because the Court finds that Dr. Cohen lacks standing, Mr. Powers-Hill is the only remaining plaintiff in this case.

Defendants urge the Court to apply Pennsylvania law.  See The Plan, p. 75 ("This Program is interpreted in accordance with, and is subject to the laws of the Commonwealth of Pennsylvania.").  Suggesting that New Jersey law should apply, Plaintiffs argue that neither the Subscriber nor Dr. Cohen negotiated for, or agreed to, the choice of law clause, and as such, they are not bound by it.

At the outset, the Court must resolve which conflict of law rules govern.  Normally, in a diversity case, a federal court applies the choice-of-law rules of the jurisdiction in which it sits.  See Amica Mut. Ins. Co. v. Fogel, --- F.3d ---, 2011 WL 3930285, *3 (3d Cir. 2011).  However, because this case arises out of ERISA, a federal statute, that rule does not apply.[4]  While no court decision in this circuit has discussed this precise issue, as a starting point, the Third Circuit, citing Justice Jackson's comment in the Supreme Court decision in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 471-72 (1942) , has opined:

> A federal court sitting in a non-diversity case such as this does not sit as a local tribunal. In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state. Federal law is no juridical chameleon, changing complexion to match that of each state wherein lawsuits happen to be commenced because of the accidents of service of process and of the application of the venue statutes. It is found in the federal Constitution, statutes, or common law. Federal common law implements the federal Constitution and statutes, and is conditioned by them. Within these limits, federal courts are free to apply the traditional common-law technique of decision and to draw upon all the sources of the common law in cases such as the present.

Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 892-93 (3d Cir. 1975) (quotations and citations omitted).

_____

[4]The parties have assumed that New Jersey's conflict of law applies in this case.

Taking this cue, this Court has surveyed out-of-circuit cases and found helpful the Sixth Circuit decision in DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden, 448 F.3d 918, 922 (6th Cir. 2006).  In that opinion, the circuit held that in the context of ERISA, federal courts' conflict of law analysis should be governed by federal common law. Indeed, this is consistent with the Third Circuit's observation in Three Rivers that a federal court in a non-diversity case should apply its own rules.  And, while this circuit lacks an established body of federal choice of law rules, various jurisdictions that have weighed in on this issue – including in the ERISA context – have found that a contractual choice of law provision would generally control unless it would be unreasonable and unfair to apply that state's law. See Buce v. Allianz Life Ins. Co., 247 F.3d 1133, 1149 (11th Cir. 2001) (holding that choice of law clause in ERISA contract should be followed if it is "'not unreasonable or fundamentally unfair.'") (quoting Wang Laboratories, Inc. v. Kagan, 990 F.2d 1126, 1128-29 (9th Cir. 1993)); Fenberg v. Cowden Automotive Long Term Disability Plan, 249 Fed Appx. 958, 959 (9th Cir. 2007); Tyler v. AIG Life Ins. Co., 273 Fed. Appx. 778, 785 (11th Cir. 2008) (holding, where policy contained choice of law clause calling for application of state law, that state law governs where federal common law and state law conflict); see also Barnes v. American International Life Assurance Co. of New York, 681 F. Supp. 2d 513, 520 (S.D.N.Y. 2010); Wheeler v. A & M Industrial Supply Co., Inc., No. 98-3200, 1998 U.S. Dist. LEXIS 16867, at * 8-9 (E.D. Pa. Oct. 29, 1998)("When parties have a contractual choice of law provision . . . courts generally comply with the parties' will and apply the law designated in the contract so long as the law chosen has a reasonable relationship to the parties or the transaction.").

The above summary of federal common law in this area does not differ significantly

11

from New Jersey's conflict of law analysis.  As a general matter, New Jersey courts tend to enforce choice-of-law provisions in contracts provided the public policies of New Jersey are not offended and the contract bears some relation to the chosen jurisdiction.  See Instructional Systems, Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341 (1992); Bell v. Merchants & Businessmen's Mut. Ins. Co., 241 N.J. Super. 557, 562 (App. Div. 1988), certif. denied, 122 N.J. 395 (1990); see also Alcman Sevices Corp. v. Bullock, P.C., 925 F. Supp. 252, 259 (D.N.J. 1996), aff'd without op'n, 124 F.3d 185 (3d Cir. 1997);  Green Constr. Co. v. First Indem. of America Ins. Co., 735 F. Supp. 1254, 1259 n. 2 (D.N.J. 1990), aff'd without op'n, 935 F.2d 1281 (3d Cir. 1991); Security Sav. Bank v. Green Tree Acceptance, Inc., 703 F. Supp. 350, 354 (D.N.J. 1989) ("New Jersey conflict of laws principles clearly recognize the validity and enforceability of choice-of-law provisions in contracts . . . ."); see also Gay v. CreditInform, 511 F.3d 369, 389 (3d Cir. 2007)("courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them."); Schunkewitz v. Prudential Sec., Inc., 99 Fed. Appx. 353 (3d Cir. 2004).

Accordingly, because there is ample federal authority honoring choice of law provisions in ERISA type contracts, coupled with New Jersey's generous stance on enforcing choice of law provisions, a consideration which I find pertinent in this analysis, the Court finds that Pennsylvania law would govern state law related disputes arising from the Plan absent any public policy or fairness concerns.

Here, Plaintiffs advance only one reason why the Court should not enforce the provision: neither the Subscriber nor Dr. Cohen specifically negotiated the Plan.  Simply put, Plaintiffs' reasoning is one grounded in principles of adhesion contracts.  In that

connection, this argument is easily disposed of by the Third Circuit's explanation in
Assicurazioni Generali v. Clover, 195 F.3d 161, 165 (3d Cir. 1999), which clearly rejects
Plaintiffs' proposition.  Applying Pennsylvania law, the Third Circuit wrote:

> We recognize that courts sometimes do not enforce choice of law clauses
> in adhesion contracts due to the differential in bargaining power between
> the parties. This reasoning, however, does not apply to group insurance
> contracts, at least in the circumstances here. When, as in this case, a
> business entity such as Intrenet obtains a group insurance contract that
> applies to individuals in various states, both the insurer and the
> organization have an arguable interest in establishing uniform procedures
> by specifying a particular state's law to apply to future disputes. Further,
> a choice of law made by the insurer is less suspect in the group insurance
> context as the greater bargaining leverage possessed by the group agent
> should protect the insureds from unfavorable law.

Id. (citations omitted).

Under the Third Circuit's guidance, absent any other reasons, a simple assertion
of adhesion contract in this case will not suffice to undermine the enforceability of the
choice of law provision contained in the Plan.  See Nuzzi v. Aupaircare, Inc., 341 Fed.
Appx. 850, 851 (3d Cir. 2009) (the choice of law provision is enforceable when the
language is unambiguous and does not violate public policy).  Furthermore, the Court
finds that the Plan has a substantial relationship with Pennsylvania because both
defendants ComCast and QCC are Pennsylvania entities.  In that regard, there would be
no fairness issues as Pennsylvania has an interest in regulating the entities within its
borders, and Plaintiffs have not raised any other concerns.  Accordingly, the Court is
satisfied that Pennsylvania law applies to any state law related issues.

Having made that determination, the Court turns to the issue of Dr. Cohen's
standing by virtue of the assignment of benefits from the Subscriber.

## IV.   Dr. Cohen's Standing

Here, there is no dispute that under ERISA's civil enforcement provision, only participants and beneficiaries have standing to bring a lawsuit.  See 29 U.S.C. § 1132(a)(1)(B); Pascack Valley Hosp. Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 400 (3d Cir. 2004).  Rather, Dr. Cohen argues that he stands in the shoes of a beneficiary because the Subscriber had assigned his rights under the Plan to Dr. Cohen.[5]  Fatal to this position is the Plan's anti-assignment clause which forbids the type of assignment arranged between Dr. Cohen and the Subscriber.

The Plan's anti-assignment clause provides: "The right of a Covered Person to receive benefit payments under this coverage is personal to the Covered Person and is not assignable in whole or in part to any person, Hospital, or other entity nor may benefits of this coverage be transferred, either before or after Covered Services are rendered . . . ." The Plan, p. 82.  Based on such clear and unambiguous language, Defendants contend that the assignment of benefits from the Subscriber to Dr. Cohen should be voided, which would defeat Dr. Cohen's standing in this case.

Plaintiffs offer two responses.  In the first instance, it appears that Plaintiffs argue that anti-assignment clauses are unenforceable as a matter of law under principles of

---

[5]Defendants also do not dispute that a health care provider, such as Dr. Cohen, may bring an ERISA claim upon a valid assignment of benefits.  See Def. Motion Brief, p. 18 (citing Temple Univ. Hosp. Inc. v. Group Health, Inc., No. 05-102, 2006 WL 1997424, at *8 (E.D. Pa. Jul. 13, 2006)).  While the Third Circuit has not squarely addressed this issue, the Court independently finds this legal position sound.  See Charter Fairmount Inst., Inc. v. Alta Health Strategies, 835 F. Supp. 233, 237 (E.D. Pa. 1993); Neuner v. Horizon Blue Cross Blue Shields of New Jersey, 301 B.R. 662, 682 (Bankr. D.N.J. 2003) (explained that numerous districts in this circuit have found that health care providers have standing to sue under § 1132(a)(1)(B) where there has been an assignment of rights under the plan).

preemption.  In support of their position, Plaintiffs refer the Court to the decisions in Neuner v. Horizon Blue Cross Blue Shield of New Jersey, 301 B.R. 662 (Bankr. D.N.J. 2003), and Ambulatory Surgical Center of New Jersey v. Horizon Healthcare Services, No. 07-2538, 2008 U.S. Dist. LEXIS 13370 (D.N.J. Feb. 21, 2008).  However, neither case is dispositive of the issue.  First, in Neuner, the court dealt with assignments of benefits in various state, and ERISA, governed plans.  In its analysis, that court reiterated the principle – which this Court has accepted in this case – that a subscriber may assign his/her rights under an ERISA plan to a health care provider, and that numerous courts have held that this type of assignment confers standing on the provider to bring suit on behalf of a subscriber. See Neuner, 301 B.R. at 682.  In that connection, the court stated that the providers in that case have standing as assignees, particularly since the insurer "[did] not [cite] any specific bar to assignment in the self funded plans under consideration . . . ." Id.  Clarifying an earlier ruling, in footnote 16 of the Opinion, the court explained that in its prior decision, which involved plans not governed by ERISA, it found that an anti-assignment clause was valid under New Jersey state law; however, that court further noted, in dicta, that the prior analysis – predicated on state law – did not apply to medical plans governed by ERISA.  Since the court was not presented with any anti-assignment clause in the ERISA plans in that case, the Neuner court never reached the issue of whether ERISA would preempt anti-assignment clauses.

Next, in Ambulatory Surgical, the court dealt with an argument similar to that made here regarding the enforceablity of an anti-assignment clause in an ERISA plan. Plaintiffs point to the portion of that court's decision which seemingly suggests that anti-assignment clauses are unenforceable in ERISA plans.  In that regard, the court only

15

wrote:  "it [is] disjointed to recognize a defendant as a valid assignee with 'the right to receive the benefit of direct reimbursement from its patients' insurers," while not being allowed to judicially enforce this right.   Ambulatory Surgical, 2008 U.S. Dist. LEXIS 13370 at *7-8.  In making its decision, the court relied on another district court opinion, Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc., No. 06-928, 2007 U.S. Dist. LEXIS 61137, at *12 (D.N.J. Aug. 29, 2007).  The Wayne opinion, however, did not address the question of whether ERISA forbids anti-assignment clauses as a matter of law.  Instead, the Wayne court only dealt with the more settled issue of whether healthcare providers have standing to sue under ERISA as valid assignees.  See Id.  In fact, other authorities the court relied on to support its decision did not involve anti-assignment clauses.  Other than its reliance on cases which did not implicate anti-assignment clauses, the court in Ambulatory Surgical did not detail its reasoning or holding.  Thus, to the extent Ambulatory Surgical held that anti-assignment clauses are unenforceable under ERISA, I do not agree.

As Defendant correctly indicates, when this Court was confronted with the identical issue in 2005, it explained:

> Although the Third Circuit has not addressed the issue of anti-assignability clauses, a number of federal and state courts have found that unambiguous anti-assignment provisions in group health care plans are valid. See, e.g., Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc., 371 F.3d 1291, 1294-96 (11th Cir. 2004)("Because ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan--like assignability. Thus, an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable."); City of Hope Nat'l Med. Ctr. v. Healthplus, Inc., 156 F.3d 223, 229 (1st Cir. 1998) ("Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting

16

parties."); <u>St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.</u>, 49 F.3d 1460, 1464-65 (10th Cir. 1995) ("ERISA's silence on the issue of the assignability of insurance benefits leaves the matter to the agreement of the contracting parties."); <u>Davidowitz v. Delta Dental Plan of Cal., Inc.</u>, 946 F.2d 1476, 1478 (9th Cir.1991) ("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions."); <u>Washington Hosp. Ctr. Corp. v. Group Hospitalization and Med. Servs., Inc.</u>, 758 F.Supp. 750, 755 (D.D.C.1991) (holding that an anti-assignment provision was valid and enforceable after concluding that enforcement of the provision was not contrary to public policy); <u>Renfrew Ctr. v. Blue Cross & Blue Shield</u>, 1997 U.S. Dist. LEXIS 5088, 1997 WL 204309, *3 (N.D.N.Y. 1997) ("anti-assignment clauses play an important role in constraining the costs of health care"); <u>Somerset Orthopedic Assocs. v. Horizon Blue Cross and Blue Cross and Blue Shield of New Jersey</u>, 345 N.J. Super. 410, 785 A.2d 457, 465 (N.J. App. Div. 2001)(finding that "such subscriber assignment are void as contrary to public policy" and holding that "the anti-assignment clause in Horizon's subscriber contracts is valid and enforceable to prevent assignment by subscribers of policy benefit payments to non-participating medical providers without Horizon's consent"). This Court finds the caselaw supporting the enforceability of anti-assignment provisions in health benefit plans persuasive.

<u>Briglia</u>, 2005 U.S. Dist. LEXIS 18708 at *12-14.

Since then, the Third Circuit has not confronted the issue; however, courts in this district have followed this analysis. <u>See Glen Ridge Surgicenter, LLC, v. Horizon Blue Cross Blue Shield of New Jersey, Inc.</u>, 2009 U.S. Dist. LEXIS 90600, at *11-12 (D.N.J. Sep. 20, 2009); <u>Wayne Surgical</u>, 2007 U.S. Dist. LEXIS 61137 at *4; <u>Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.</u>, No. 06-462, 2007 U.S. Dist. LEXIS 94056, at *9 (D.N.J. Dec. 26, 2007).

Aside from <u>Neuner</u> and <u>Ambulatory Surgical</u>, which this Court has distinguished, Plaintiffs have not advanced any cogent reasoning for the Court to depart from its earlier decision in <u>Briglia</u>, particularly since there have been no significant changes in law in this area, and the Third Circuit has not addressed the issue. Thus, the Court will adhere to its

prior decision. Having concluded that the anti-assignment clause in the Plan is not barred under ERISA, the Court finds the unambiguous language of that clause prohibits the Subscriber from assigning his benefits.

Notwithstanding the anti-assignment clause, Plaintiffs, relying on New Jersey state law, further argue that Defendants have waived their right to enforce the provision through their continued course of conduct and dealings with Dr. Cohen.[6] However, based upon the choice of law provision in the Plan, Pennsylvania law governs.  Under Pennsylvania law, "[w]aiver is a voluntary and intentional abandonment or relinquishment of a known right," Prime Medica Assoc's v. Valley Forge Ins. Co., 970 A.2d 1149, 1156 (Pa. Super. Ct. 2009), and it "may be established [only] by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary."  Id. at 1157 (internal quotations omitted).  Plainly, "[t]o constitute a wavier of legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it." Brown v. City of Pittsburgh, 186 A.2d 399, 401 (Pa. 1962).  Put simply, in the absence of unequivocal action evidencing clear intent to forego contractual rights by the party against whom waiver or estoppel is asserted, such defense fails as a matter of law.  U.S. Claims, Inc. v.

---

[6]A waiver occurs when a party performs an act that voluntarily, knowingly, and intentionally relinquishes a known right. See County of Morris v. Fauver, 153 N.J. 80 (citations omitted). However, a New Jersey court has found that a party may waive an anti-assignment provision "by a written instrument, a course of dealing, or even passive conduct, i.e., taking no action to invalidate the assignment vis-a-vis the assignee." Garden State Bldgs., L.P. v. First Fid. Bank, N.A., 305 N.J. Super. 510 (App. Div. 1997), cert. denied, 153 N.J. 50 (1998) (emphasis added).

Yehuda Smolar, P.C., 602 F.Supp. 2d 590, 598-99, 599 n.12 (E.D. Pa. 2009).

Here, the bulk of Plaintiffs' waiver defense is predicated upon a course of dealing; indeed, the Amended Complaint is pled in such a fashion, albeit conclusory.[7]  See, e.g., Am. Compl., ¶¶ 3, 5, 15, 17, 55, 73 ("Cohen's office dealt directly with Defendants in submitting claims, filing appeals requesting documentation on the Claim and the disposition of the Claim and appeal.").  Defendants urge the Court to reject Plaintiffs' defense of waiver because the allegations are insufficient under Pennsylvania law. However, Plaintiffs have not substantively addressed whether their allegations are sufficient to meet the strictures of Pennsylvania law on waiver.  Indeed, as pled, the Amended Complaint does not set forth any allegations that any defendants acted beyond the expectation that the Plan benefits were not assignable, or that Defendants knowingly relinquished their right to enforce the anti-assignment clause.  In fact, Plaintiffs concede that QCC tendered payment of benefits directly to the Subscriber rather than to Dr. Cohen.  Am. Compl., ¶ 13.  Moreover, Defendants never responded to Dr. Cohen's attempted provider appeal because they maintain that Dr. Cohen has no appeal rights as an out-of-network doctor. Id. at ¶ 44. And, Defendants repeatedly denied requests by Dr. Cohen to obtain plan documents based on the fact that Dr. Cohen had no rights to those documents.  Id. at ¶¶ 55-59.  These allegations do not come close to suggesting that Defendants unequivocally intended to relinquish the right to enforce the anti-assignment provision.  Equally deficient are Plaintiffs' conclusory allegations that Dr. Cohen

---

[7]While the Court need not address this issue, it appears that Plaintiffs' allegations of waiver with respect to its course of dealing with Defendants are likewise not sufficient under the requirements set forth in Garden State.

consistently dealt with Defendants in connection with the Subscriber's insurance claim. Mere communication with Defendants is not the type of allegation that would satisfy waiver under Pennsylvania law; rather, Plaintiffs must allege that Defendants took a decisive act to surrender their rights under the Plan. This Plaintiffs have not done.

Finally, Plaintiffs allege that Defendants were "aware of the assignment of benefits and approved the surgery and [have] never advised Cohen that [they] declined to recognize or accept the assignment of benefits." Id. at ¶ 16. This allegation is insufficient to support a waiver; even if any defendant had knowledge of the assignment, mere silence or inaction cannot give rise to either waiver or estoppel. Nat'l Data Payment Systs. v. Meridian Bank, 18 F.Supp. 2d 543, 548 (E.D. Pa. 1998); Commonwealth v. Gimbara, 835 A.2d 371, 375 (Pa. Commw. 2003). In sum, the allegations related to waiver are insufficient under Pennsylvania law.

Accordingly, for these reasons, Dr. Cohen has no standing to bring a § 502(a) claim under ERISA as an assignee, and Count IV is thereby dismissed.[8]

## V.   Breach of Fiduciary Duty (Count III)

The Subscriber brings a breach of fiduciary duty claim against Defendants. It alleges that Defendants erroneously calculated plan benefits and seeks payment of additional benefits allegedly owed. See Am. Compl., ¶¶ 64-66. However, this type of relief is disallowed by ERISA.

The Third Circuit cautioned that it is improper to assert a breach of fiduciary claim

---

[8]It is unclear whether Counts II and III are brought by both Dr. Cohen and the Subscriber. In any event, to the extent these counts are brought by Dr. Cohen, he lacks standing to pursue them.

when it is akin to a claim to enforce the terms of a benefit plan.  In D'Amico v. CBS Corporation, 297 F.3d 287, 291 (3d Cir. 2002), pension plan participants sued their former employer under ERISA alleging that there had been an illegal partial termination of a plan that entitled all non-vested participants to  become vested.  In finding that a plaintiff who brings a claim for breach of fiduciary duties under ERISA must exhaust his administrative remedies, the Third Circuit held that a claim for breach of fiduciary duty may be "synonymous with a claim to enforce the terms of a benefit plan," and is held to the same exhaustion requirements imposed on claims to enforce ERISA-regulated plans. Id.  Similarly, in Harrow v. Prudential Insurance Company of America, 279 F.3d 244 (3d Cir. 2002), the Third Circuit found that "a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA." Id. at 254 (internal quotations omitted); see Morley v. Avaya, Inc. Long Term Disability Plan, No. 04-409, 2006 U.S. Dist. LEXIS 53720, at *23 (D.N.J. Aug. 3, 2006) (dismissed plaintiff' s breach of fiduciary duty claim because plaintiff did not claim any additional relief under her breach of fiduciary duty claim that she is not otherwise potentially entitled to if she prevails on her wrongful denial); see also Zahl v. Cigna Corp., No. 09-1527, 2010 U.S. Dist. LEXIS 32268, at *9-11 (D.N.J. Mar. 31, 2010).

    Here, the Amended Complaint contains no allegations that differentiate the Subscriber's claim of breach of fiduciary duty (Count III) from his claim for benefits in Count I.  Indeed, in Count III, the Subscriber asserts that "[Defendants'] determination of $5,123.90 as compensation for services, even for in-network providers," is a breach of its fiduciary duty to the Subscriber.  Am. Compl., ¶¶ 65-66.  As pled, in order to resolve

this count, however, an interpretation and application of ERISA would be necessary. See Harrow, 279 F.3d at 254 (where claim calls for interpretation and application of benefits plan, it is a claim for benefits, not breach of fiduciary duty). In essence, Count III is duplicative of Count I, wherein the Subscriber alleges that he is owed more benefits under the Plan.

Moreover, while § 502(a)(3) creates a cause of action for breach of fiduciary duties imposed by ERISA, the Supreme Court has held that it is a "safety net," or "catch-all" provision allowing for "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996). Here, the Subscriber does not seek different forms of relief in Count III from Count I. Instead, he seeks damages in both, which demonstrates the impermissibly duplicative nature of the two claims. Accordingly, because the Subscriber does not seek "additional relief" otherwise not provided for in § 502(a)(1), Count III is dismissed. See Zahl, 2010 U.S. Dist. LEXIS 32268 at *11-12 (same holding).

## VI.   Failure to Provide Plan Information (Count II)

ERISA provides civil remedies to plan beneficiaries and/or participants where plan administrators fail to provide plan documentation in response to beneficiaries' and/or participants' written requests for information to which they are entitled. See 29 U.S.C. 1132(c)(1) ("[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of

up to $100 a day . . . ."). In that connection, 29 U.S.C. § 1024(b)(4) provides that "the administrator shall, upon written request of any participant or beneficiary, furnish a copy of the . . . instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4); Bicknell v. Lockheed Martin Group Benefits Plan, 410 Fed. Appx. 570, 577 (3d Cir. 2011).

The Third Circuit has explained that the "ERISA's legislative history makes clear that Congress intended the information-producing provisions to enable claimants to make their own decisions on how best to enforce their rights." Daniels v. Thomas & Betts Corp., 263 F.3d 66, 77 (3d Cir. 2001); see, e.g., Graden v. Conexant Systs. Inc., 496 F.3d 291, 302-03 (3d Cir. 2007); Pane v. RCA Corp., 868 F.2d 631, 638-39 (3d Cir. 1989) (holding that beneficiary's 1132(c) claim failed because beneficiary did not actually request any information to which he was entitled). To be clear, in order to obtain plan documents under ERISA, a beneficiary and/or participant must make the written request. McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc., No. 09-571, 2011 U.S. Dist. LEXIS 108903, at *20-21 (D.N.J. Sep. 20, 2011) ("Plaintiff, however, neither alleges that she made a written request to Horizon for her plan's SPD or that Horizon failed to respond to the request within 30 days. Both elements are essential to establish a violation of § 104(b)(4) and trigger the penalties of § 502(c).").

Here, Plaintiffs have not alleged that the Subscriber, who is the beneficiary under the Plan, made a written request for documents. Rather, Plaintiffs allege that Dr. Cohen, on behalf of the Subscriber, requested "certain documentation including a full copy of the plan as well as documentation Defendants used in evaluating [the Subscriber's] Claim and determinations of the payments made on that Claim." Am. Compl., ¶¶ 54-55. In that

respect, Plaintiffs mistakenly contend that ERISA does not require the beneficiary to make the written request.  However, as the Court set forth above, this is an essential requirement under 29 U.S.C. § 1024(b)(4).  As such, because Plaintiffs have not alleged that the Subscriber made any written requests, this Count is dismissed for failure to state a claim.  Of course, to the extent this Count is premised upon Dr. Cohen's request as an assignee, it also fails to state a claim because the assignment Dr. Cohen received was not valid.

## CONCLUSION

For the reasons stated above, the Court concludes that IBC is dismissed as a defendant.  In that regard, if during the course of discovery, the Subscriber obtains information that would support allegations of IBC's fiduciary status, he may move to amend the Amended Complaint at that time.  Next, because assignments of benefits are prohibited by the Plan, Dr. Cohen does not have standing to bring any claims in this case.  Finally, Counts II, III and V by the Subscriber are dismissed for failure  to state a claim.  Accordingly, only the Subscriber's claim in Count I against ComCast and QCC remains in this case at this time.

An appropriate order shall follow.

DATED:  October 24, 2011                              /s/ Freda L. Wolfson____
                                                      Freda L. Wolfson
                                                      United States District Judge